**MORTGAGEBANC & TRUST, INC., et al., Appellants,**

v.

**The STATE of Texas, Appellee.**

**No. 14552.**

Court of Appeals of Texas, Austin.

Oct. 8, 1986.

Rehearing Denied Oct. 29, 1986.

Ace Pickens, Margaret D. Kennedy, Brown, Maroney, Rose, Barber & Dye, Austin, for appellants.

Jim Mattox, Atty. Gen., Allene D. Evans, Asst. Atty. Gen., for appellee.

SHANNON, C.J., and EARL W. SMITH and GAMMAGE, JJ.

GAMMAGE, Justice.

Appellants MortgageBanc & Trust, Inc. (MBT), the Signorelli Family Trust (Trust) and John E. Signorelli appeal from an order granting a temporary injunction. We will affirm the order of the trial court.

This suit was originally brought by the State of Texas in response to alleged fraudulent practices by Central Mortgage & Trust, Inc. (CMT). CMT was created in 1981 as a mortgage banking company, and was approved to participate in the U.S. Department of Housing and Urban Development's (HUD) Title I and II programs. These programs insure loans against loss in the event of the borrower's default. In 1983, CMT obtained authorization from the Government National Mortgage Association (GNMA) to pool loans and issue mortgage-backed securities. GNMA securities are backed by the full faith and credit of the U.S. government.

In 1984, CMT began selling Investment Trust Deposits (ITD's) to raise cash to fund mobile home loans. CMT advertisements in widely-circulated publications, including the Wall Street Journal, claimed that the ITD accounts were "100% insured and guaranteed by the full faith and credit of the U.S. government." The record reflects that CMT also made such representations orally and in literature provided to potential investors. The ITD's, however, were not government-backed securities and were never insured.

In May 1984, CMT lost its HUD Title II approval. In June 1984, the Texas Securities Board notified CMT that its ITD's were

not exempt from registration and requested voluntary cessation of advertising and acceptance of investor's money until the securities were registered and CMT was registered as a dealer. Similar action was taken against CMT by the New Mexico Securities Bureau. By early January 1985, CMT had also lost both its HUD Title I approval and its GNMA approval. On February 18, 1985, MBT was incorporated. According to the testimony of John Signorelli, chief executive officer of both CMT and MBT, MBT was created to "be the friendly ally to CMT, to get CMT out of the ditch." On June 20, 1985, both CMT and MBT were placed under supervision by the Texas Banking Commissioner, who subsequently ordered CMT closed on June 28, 1985. MBT, however, continues to operate under the Commissioner's supervision. On July 5, 1985, CMT filed a petition for voluntary reorganization under Chapter 11 of the U.S. Bankruptcy Code. The petition asserts that CMT's liabilities exceed its assets by $2,234,193.95. A trustee in bankruptcy was appointed for CMT on August 26, 1985.

The relationships of the parties are as follows: CMT was created by Signorelli with funds from the Signorelli Family Trust. The Trust owns 100% of the outstanding stock of both CMT and MBT. John Signorelli is chairman and chief executive officer of both CMT and MBT. The trustee of the Trust is related by marriage to John Signorelli. CMT and MBT share the same offices and have numerous common employees. It is disputed whether MBT kept a separate set of books, but there is clear evidence of commingling of assets by CMT and MBT.

MBT was capitalized as a result of the following transactions: In December 1984, a $1,060,000 note receivable was transferred by the Trust to CMT in exchange for 278,716 shares of CMT stock. In January 1985, CMT conveyed $765,147 in assets (real estate and receivable loans) to the Trust and thereby redeemed 129,248 shares of its stock. In February 1985, the Trust transferred the $765,147 in assets to MBT in exchange for 100,000 shares of MBT stock.

Because it is under the exclusive jurisdiction of the federal bankruptcy court, CMT is not a party to the injunction or to this appeal. MBT, the Signorelli Family Trust and John Signorelli, however, appeal from that portion of the temporary injunction which prevents each of them from:

a. Directly or indirectly disposing of, transferring, selling, assigning, cancelling, altering, concealing, secreting, disguising, destroying, hypothecating, or from removing from the jurisdiction of the Court any of the books, records, invoices, receipts, contracts, promissory notes, leases, investor lists, banking records, tax advice, or any other document or tangible items relating to in any way Defendant MortgageBanc, or relating in any way to the ITD securities offered and sold by or through Defendants, including CMT, except that this Temporary Injunction shall not hinder or affect the activities of the Department of Banking pursuant to its supervision and/or conservatorship of Defendant MortgageBanc;

b. Directly or indirectly disposing of, transferring, selling, assigning, negotiating, cancelling, concealing, secreting, disguising, encumbering, hypothecating, or removing from the jurisdiction of this Court any money, assets, notes, equipment, fixtures, receivable, expectancies, funds or other property, whether real, personal or mixed, and whether tangible or intangible, wherever situated, belonging to, owned by, in the possession of, acquired by, claimed by, or subject to claim by Defendant MortgageBanc, or connected in anyway [sic] with or received in connection with the ITD securities offered and sold by Defendants, including CMT, except that this Temporary Injunction shall not hinder or affect the activities of the Department of Banking pursuant to its supervision and/or conservatorship of Defendant MortgageBanc.

■ We note at the outset that this is an appeal of an interlocutory order expressly authorized by Tex.Civ.Prac. & Rem.Code Ann. § 51.014 (1986). Accordingly, the merits of the underlying case are not presented for appellate review. Review of the order is strictly limited to a determination of whether there has been a clear abuse of discretion by the trial court in granting or denying the temporary injunction. Because no findings of fact or conclusions of law were filed, the trial court judgment must be upheld on any legal theory supported by the record. *Davis v. Huey*, 571 S.W.2d 859, 861–2 (Tex.1978).

■ By their fourth point of error, appellants claim the quoted provisions of the temporary injunction prevent MBT from carrying on ordinary business, and therefore, result in "oppressive, harsh, unconscionable and inequitable injury to the defendants, whereas the denial of such temporary injunction will result in little or no harm to plaintiffs."

MBT, however, continues to operate under supervision of the Texas Banking Commissioner. The injunction specifically provides that it "shall not hinder or affect the activities of the Department of Banking pursuant to its supervision...." We fail to see how the temporary injunction interferes in any way with the ordinary business activity, conducted under supervision, of MBT at this time. Appellants' fourth point of error is overruled.

By their first point of error, appellants assert that the trial court abused its discretion in granting the temporary injunction because the evidence demonstrates, as a matter of law, that the plaintiff has no cause of action against them. They argue that MBT is an entity separate from CMT and has never dealt in ITD's; that since there is no evidence of illegal activity on the part of MBT, MBT should not be subject to injunction. We will overrule this contention for the reasons stated below.

■ Under Tex.Bus. & Com.Code Ann. § 24.02 (1968), any transfer of property is void with respect to an existing creditor if the transfer was intended to "delay or hinder any creditor, purchaser, or other interested person from obtaining that to which he is, or may become entitled." § 24.-02(a)(1). Indicia of fraudulent transfers may include transfers for inadequate consideration, intra-familial transfers, or the retention of possession or other evidence of ownership. *United States v. Chapman*, 756 F.2d 1237, 1243 (5th Cir.1985) (construing Tex.Bus. & Com.Code Ann. § 24.02). There is sufficient evidence in the record from which the required fraudulent intent may be inferred.

A note receivable was transferred to CMT by the Trust in exchange for CMT stock in December 1984, after CMT had experienced numerous difficulties. In January 1985, CMT transferred some of its assets to the trust in exchange for a portion of its own stock. The value of that stock had certainly become questionable since CMT had already lost its HUD and GNMA approvals, and the Texas Securities Board had alerted the Banking Commissioner that accountants' workpapers showed CMT to be insolvent. There is also John Signorelli's testimony that MBT was incorporated in an attempt to "get CMT out of the ditch" after it became apparent that CMT was floundering. The plan was to liquidate CMT assets and transfer them to MBT. Signorelli further testified that, in his opinion, no notice to ITD purchasers of the transfer of assets from CMT to MBT was necessary.

The evidence, when taken as a whole, shows that CMT fraudulently induced investors to purchase ITD's by representing that the ITD's were federally insured. Later, when it was obvious that CMT was in financial trouble, valuable assets were transferred for questionable consideration, through the Trust, to MBT. Several months later CMT filed a petition in bankruptcy claiming a net assets-to-liabilities deficit of more than $2 million. There is other evidence indicating that the amount of the deficit may actually have been much greater. The only apparent recourse available to an ITD investor at that point was to

file a claim in bankruptcy court and to compete there with CMT's other creditors.

■ Claims need not have been reduced to judgment at the time of a transfer for the transfer to be set aside as fraudulent. *Hollins v. Rapid Transit Lines,* 440 S.W.2d 57, 59 (Tex.1969). *See* also *Chapman, supra.* Such a transfer is void as a matter of law if the grantee had notice of the fraudulent intent at the time of the transfer. Tex.Bus. & Com.Code Ann. § 24.02(b) (1986). In *Hawes v. Central Texas Production Credit Ass'n,* 492 S.W.2d 714 (Tex.Civ.App.), aff'd, 503 S.W.2d 234 (Tex.1973), the court held that a transfer was void where the grantor transferred the property with the intent to defraud and the grantee knew of such intent, even though the grantor was indebted to the grantee and the grantee paid adequate consideration for the property. It is inconceivable that any of the parties involved here, being essentially identical personalities, were unaware at the time of the transfer that the assets transferred to MBT were subject to claims by creditors of CMT. We hold that evidence of the indirect transfer of assets from CMT to MBT is sufficient for the trial court to have found the transaction void as a fraudulent conveyance. Appellants' first point of error is overruled.

■ Appellants assert in points of error two and three that the evidence establishes as a matter of law that plaintiffs will suffer no immediate or irreparable injury, and that the relief granted extends beyond maintaining the status quo. The requirements for injunctive relief in this case, however, are defined by statute, and such express statutory language supersedes the equitable requirements argued by appellants which are generally applicable to common law injunctive relief. *See Texas Farm Bureau Cotton Ass'n v. Stoval,* 113 Tex. 273, 253 S.W. 1101, 1108 (1923); *Rio Grande Oil Co. v. State,* 539 S.W.2d 917, 921 (Tex.Civ.App.1976, writ ref'd n.r.e.); Tex.Civ.Prac. & Rem.Code Ann. § 65.001 (1986); 44 Tex.Jur.3d Injunctions § 19, at 399 (1985).

Under the Texas Securities Act, injunctive relief is proper not only against one who has violated the Act, but also against

"... any person or company who shall have employed, or is about to employ any device, scheme or artifice to defraud or to obtain money or property by means of any false pretense, representation or promise, ... or *is about to engage in any* practice or *transaction or course of business* relating to the purchase or sale of securities which is in violation of law or which is fraudulent or ... which has operated or *which would operate as a fraud upon the purchaser* ..." Tex. Rev.Civ.Stat.Ann. art. 581–32(A) (Supp. 1986) (emphasis added).

The statute also provides that

"... the Attorney General may, on request by the Commissioner, and in addition to any other remedies, bring action in the name and on behalf of the State of Texas against such person or company and any other person or persons heretofore concerned in or *in any way participating in or about to participate in* such fraudulent practices or acting in such violation of this Act, to enjoin such person or company and such other person or persons from continuing such fraudulent practices or engaging therein or doing any act or acts in furtherance thereof ..." *Id.* (emphasis added).

■ We believe the statutory language is sufficiently broad to justify the temporary injunction issued in this case. MBT falls within the above language because there is sufficient evidence for the trial court to have found that MBT is in possession of funds, fraudulently conveyed to it, which were obtained by CMT in violation of the Texas Securities Act. This is in accord with the holding in *EnnTex Oil & Gas Co. v. State,* 560 S.W.2d 494, 498 (Tex.Civ.App. 1977, writ ref'd n.r.e.), appeal dism'd, 439 U.S. 961, 99 S.Ct. 445, 58 L.Ed.2d 419 (1978). Points of error two and three are overruled.

We affirm the order of the trial court.