**CARDINAL HEALTH STAFFING NETWORK, INC., Appellant,**

v.

**Jay BOWEN, Appellee.**

No. 01–02–00769–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 3, 2003.

---

7. *See supra* note 3.

Drew B. Tipton, Baker & Hostetler, LLP, Houston, for Appellant.

Shelly Ward Bennett, Tony P. Rosenstein, Amy Douthitt Maddux, Baker Botts, L.L.P., Houston, for Appellee.

Panel consists of Justices TAFT, KEYES, and ALCALA.

## OPINION

TIM TAFT, Justice.

Appellant, Cardinal Health Staffing Network, Inc. ("Cardinal"), appeals from the denial of its application for a temporary injunction in its suit to enforce a non-competition covenant and for unfair competition and misappropriation of trade secrets, among other things. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(4) (Vernon Supp.2003). We determine (1) whether the trial court erred in implicitly finding that Cardinal would not suffer irreparable injury pending trial and, alternatively, (2) whether Cardinal had to show that it had an irreparable injury for which it had no adequate legal remedy. We affirm.

## Background

Professional Health Care Resources, Inc. ("PHR") was in the interim-pharmacy-staffing business. PHR provided pharmacists and pharmacy technicians to hospital and retail pharmacies on a temporary basis. The PHR employees who filled vacancies for pharmacists and technicians at client pharmacies were called "schedulers." Appellee, Jay Bowen, started working with PHR as a temporary pharmacy technician, but he became a PHR scheduler on January 30, 2000.

On his first day of work as a scheduler, Bowen signed PHR's employment agreement, which contained non-disclosure and non-competition covenants. The non-competition covenant provided in pertinent part that if Bowen were to leave PHR, he would not, directly or indirectly, (1) call on, solicit, or take away any of PHR's clients or prospective clients on whom he had called or with whom he had became acquainted during his employment with PHR or (2) engage in, manage, operate, join, control, or own an interest in any business that was competing with PHR when he left PHR or that would come into "direct" competition with PHR during the year after he left. The covenant precluded the defined competition anywhere in Texas east of San Angelo for one year after Bowen left PHR, unless PHR and its affiliates had ceased doing business in a particular city or county or in the State.

On November 15, 2001, Cardinal purchased all of PHR's stock. Bowen did not wish to work for Cardinal. Some time that same month, Bowen began discussing employment opportunities with CompleteRx, a pharmacy-management company that Bowen had serviced while working at PHR. CompleteRx offered Bowen a job at the end of November 2001, and Bowen accepted it shortly thereafter. Bowen left Cardinal on January 24, 2002. About the time that Bowan began work at CompleteRx, that company started an interim-pharmacy-staffing business. Bowen worked as a scheduler for CompleteRx.

The parties disputed whether the PHR non-competition covenant bound Bowen or was valid, whether Bowen was violating that covenant by working for CompleteRx as a scheduler, and whether Bowen was using any of Cardinal's confidential information at CompleteRx.[1]

---

1. Cardinal claims that the confidential information at issue fell into three categories: (1) "employee profiles," containing background information about the pharmacists and technicians whom Cardinal scheduled; (2) "client profiles," containing billing rates, credit ratings, and expense information for, and employee placement at, client pharmacies serviced by Cardinal; and (3) "day timers," showing information about where each pharmacist or technician was placed on a given day, including the hours worked, the pay rate, and the amount billed to the client pharmacy.

Cardinal sued Bowen on March 5, 2002, claiming breach of the non-competition and non-disclosure covenants, tortious interference with Cardinal's business relations with its employees, theft of trade secrets, breach of the duty of loyalty, fraud, and unfair competition and requested temporary and permanent injunctive relief and actual and punitive damages. Bowen counterclaimed for, among other things, a declaration that the non-competition covenant was void and for damages for malicious prosecution and abuse of process.

The trial court heard Cardinal's motion for temporary injunction on June 25, 2002. On July 3, 2002, the trial court denied Cardinal's temporary-injunction motion without stating reasons.

### Cardinal's Challenges

In three issues, Cardinal argues that the trial court erred by not issuing a temporary injunction to enforce the non-competition covenant and to restrain Bowen either from working in the same field as Cardinal or from soliciting or doing business with customers and clients with whom Bowen had worked at Cardinal.

### Standard of Review

 We may not review the merits of the applicant's case in an interlocutory appeal from a temporary-injunction order.

*Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 607 (Tex.App.-Houston [1st Dist.] 2002, no pet.). Whether to grant or deny a temporary injunction lies within the trial court's sound discretion. *See Surko Enters., Inc. v. Borg-Warner Acceptance Corp.*, 782 S.W.2d 223, 224 (Tex.App.-Houston [1st Dist.] 1989, no writ). "We view the evidence in the light most favorable to the trial court's order and indulge every reasonable inference in its favor." *Amalgamated Acme Affiliates, Inc. v. Minton*, 33 S.W.3d 387, 392 (Tex. App.-Austin 2000, no pet.); *accord Tel. Equip. Network*, 80 S.W.3d at 607.

### Rules Pertaining to Temporary Injunctions Generally

Injunction proceedings are governed by Civil Practice and Remedies Code chapter 65. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 65.001–65.045 (Vernon 1997 & Supp. 2003). Chapter 65 provides, in pertinent part, that "[t]he principles governing courts of equity govern injunction proceedings if not in conflict with this chapter or other law." *Id.* § 65.001. The chapter further provides that a writ of injunction may be granted if, among other grounds not applicable here, "the applicant is entitled to a writ of injunction under the principles of equity and the statutes of this state relating to injunctions." [2] *Id.* § 65.011(3).

---

**2.** Section 65.011 establishes five grounds for granting an injunction:

(1) the applicant is entitled to the relief demanded and all or part of the relief requires the restraint of some act prejudicial to the applicant;

(2) a party performs or is about to perform or is procuring or allowing the performance of an act relating to the subject of pending litigation, in violation of the rights of the applicant, and the act would tend to render the judgment in that litigation ineffectual;

(3) the applicant is entitled to a writ of injunction under the principles of equity

and the statutes of this state relating to injunctions;

(4) a cloud would be placed on the title of real property being sold under an execution against a party having no interest in the real property subject to execution at the time of sale, irrespective of any remedy at law; or

(5) irreparable injury to real or personal property is threatened, irrespective of any remedy at law.

TEX. CIV. PRAC. & REM.CODE ANN. § 65.011(1)-(5) (Vernon 1997). Subsections (2) and (4) do not apply here. The Supreme Court has construed subsections (1) and (5) to include

The Rules of Civil Procedure similarly provide, "The principles, practice and procedure governing courts of equity shall govern proceedings in injunctions when the same are not in conflict with these rules or the provisions of the statutes." TEX.R. CIV. P. 693. Therefore, the default rule, created by chapter 65 and the rules of civil procedure, is that the rules of equity control the granting of temporary-injunctive relief unless a particular statute provides otherwise.

 "[T]he inadequacies of the remedy at law [are] both the foundation of and conversely a limitation on equity jurisdiction." *Sisco v. Hereford*, 694 S.W.2d 3, 7 (Tex.App.-San Antonio 1984, writ ref'd n.r.e.). Accordingly, when "an adequate and complete remedy at law is provided, our courts, though clothed with equitable jurisdiction, will not grant equitable relief." *Rogers v. Daniel Oil & Royalty Co.*, 130 Tex. 386, 110 S.W.2d 891, 894 (1937). Equity thus requires a temporary-injunction applicant to plead and prove not only (1) a cause of action and (2) a probable right to the relief sought, but also (3) a probable, imminent, and irreparable injury in the interim. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex.2002). To establish an irreparable injury, the applicant must show that it cannot be "adequately compensated in damages or the damages cannot be measured by any certain pecuniary standard." *Id.* That is, the applicant has to establish that there is no adequate remedy at law for damages. *See Surko Enters.*, 782 S.W.2d at 225. An adequate remedy at law is one that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief. *Id.* The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru*, 84 S.W.3d at 204.

### The Showing of Irreparable Injury

 Cardinal argues that the trial court abused its discretion in denying injunctive relief because the evidence showed that Cardinal would necessarily suffer irreparable injury for which it had no adequate legal remedy pending trial. We disagree. Much of the evidence on which Cardinal relies is not viewed in the appropriate light,[3] which requires us to view the evidence in the light most favorable to the ruling and to indulge all reasonable inferences in its favor. *See Amalgamated Acme Affiliates*, 33 S.W.3d at 392. Rather, when viewed in the required light, the evidence showed that Cardinal's sales doubled between the fourth quarter of 2001 and the first quarter of 2002. Cardinal was in fact using two to three more sche-

---

the equitable requirement of irreparable injury and inadequate legal remedy. *See Town of Palm Valley v. Johnson,* 87 S.W.3d 110, 110–11 (Tex.2001) (construing section 65.011(1)); *Storey v. Cent. Hide & Rendering Co.,* 148 Tex. 509, 226 S.W.2d 615, 619 (1950) (construing predecessor to section 65.011(5)).

**3.** For example, Cardinal relies on evidence that CompleteRx did not have any interim-pharmacy-staffing agreements before Bowen joined; Bowen is the only CompleteRx scheduler; Bowen was working with Cardinal's better temporary pharmacists and technicians at CompleteRx; 17 of the 22 CompleteRx customers for whom Bowen scheduled temporary workers were those that he served when he worked at Cardinal; 17 of the 21 temporary pharmacists and technicians whom Bowen placed for CompleteRx were those whom he had placed for Cardinal; Bowen left Cardinal after having printed confidential information; and soon after having printed this information, Bowen met with CompleteRx's director and, as a CompleteRx memorandum stated, "identified more than 20 clients and 15 pharmacists who have tentatively agreed to come on board based upon statements to [Bowen] saying to call as soon as he starts his new job."

dulers at the time of the hearing than it had during the month that Bowen left Cardinal. CompleteRx and Cardinal had in common only about 7% of Cardinal's 150 pharmacists (about eight or nine pharmacists) and only about 5.6% of Cardinal's pharmacy technicians. Bowen did not solicit these pharmacists or technicians on behalf of CompleteRx; rather, these individuals came to CompleteRx on their own. Additionally, it is common in the industry for more than one interim-pharmacy-staffing company to place a given pharmacist or technician. Finally, Cardinal's general manager did not know whether Cardinal had suffered any economic damages since Bowen had left.

Given the above evidence, we hold that the trial court did not abuse its discretion in implicitly finding that Cardinal would not suffer an irreparable injury for which it had no adequate legal remedy pending trial.

By post-submission letter, Cardinal claims that the trial court erred nonetheless because a prima facie presumption of probable injury arose from Cardinal's proof that Bowen, whom Cardinal alleges was a highly trained employee, was breaching the non-competition covenant. See Unitel Corp. v. Decker, 731 S.W.2d 636, 641 (Tex.App.-Houston [14th Dist.] 1987, no writ); Martin v. Linen Sys. for Hosps., Inc., 671 S.W.2d 706, 709 (Tex. App.-Houston [1st Dist.] 1984, no writ); Hartwell's Office World, Inc. v. Systex Corp., 598 S.W.2d 636, 639 (Tex.Civ.App.-Houston [14th Dist.] 1980, writ ref'd n.r.e.). Cardinal effectively argues that the trial court was bound by this presumption.

We disagree. When the cited courts speak of "prima facie proof," they mean a rebuttable presumption. See Decker, 731 S.W.2d at 639, 641 (relying on prima facie proof to support holding that applicant had shown probable injury pending trial and also noting that "it is undisputed" that defendants who were breaching covenant were using experience acquired from applicant in direct competition with applicant); Martin, 671 S.W.2d at 709–10 (after acknowledging that prima facie proof arose from evidence of underlying breach, nonetheless evaluating both parties' evidence relating to irreparable injury); Hartwell's Office World, 598 S.W.2d at 639 (relying on prima facie proof, plus evidence that "show[ed] clearly" a fact supporting applicant, and noting that defendants had not "rebutted this evidence"); see Reiter v. Coastal States Gas Producing Co., 382 S.W.2d 243, 250 (Tex. 1964) ("Ordinarily a prima facie inference or presumption may be rebutted...."). Under these cases, proof that a highly trained employee is continuing to breach a non-competition covenant gives rise to a rebuttable presumption that the applicant is suffering irreparable injury.

As discussed above, Bowen produced evidence that contradicted any presumption that could have arisen from Cardinal's proof. Therefore, even if Cardinal was entitled to the presumption, the trial court was not bound by it.

### The Requirement to Show Irreparable Injury

In its brief and by post-submission letter, Cardinal alternatively argues that it did not have to show irreparable injury for which it had no adequate legal remedy.

**A. Whether Cardinal Had to Show Irreparable Injury to the Extent that It Sought the Temporary Injunction to Enforce the Non–Competition Covenant**

Citing this Court's opinion in Norlyn Enterprises, Inc. v. APDP, Inc., Cardinal first argues that it did not need to prove irreparable injury to the extent that Cardi-

nal sought a temporary injunction to enforce the non-competition covenant. *See id.,* 95 S.W.3d 578 (Tex.App.-Houston [1st Dist.] 2002, no pet.).

In *Norlyn,* this Court held that an applicant need not show an irreparable injury for which he has no adequate legal remedy to be entitled to a temporary injunction in a suit to enforce a non-competition covenant under the Covenants Not to Compete Act ("the Act").[4] *See id.* at 583–84, 585.

We have taken this occasion to review the correctness of our holding in *Norlyn.*

*Norlyn's* holding was based on (1) the language of the Act and (2) this Court's opinion in *Butler v. Arrow Mirror & Glass, Inc.,* 51 S.W.3d 787, 795 (Tex.App.-Houston [1st Dist.] 2001, no pet.). *Norlyn,* 95 S.W.3d at 583–84. We examine whether the stated bases support *Norlyn's* holding.

### 1. The Act

In *Norlyn,* we relied upon the following provisions of the Act:

**§ 15.51. Procedures and Remedies in Actions to Enforce Covenants not to Compete**

(a) Except as provided in Subsection (c) of this section, a court may award the promisee under a covenant not to compete damages, injunctive relief, or both damages and injunctive relief for a breach by the promisor of the covenant.

TEX. BUS. & COM.CODE ANN. § 15.51(a) (Vernon 2002).

**§ 15.52. Preemption of Other Law**

The criteria for enforceability of a covenant not to compete provided by Section 15.50 of this code and the procedures and remedies in an action to enforce a covenant not to compete provided by Section 15.51 of this code are exclusive and preempt any other criteria for enforceability of a covenant not to compete or procedures and remedies in an action to enforce a covenant not to compete under common law or otherwise.

*Id.* § 15.52. Apparently assuming that the "injunctive relief" to which section 15.51(a) referred included temporary-injunctive relief, we held that section 15.51(a) preempted the equitable rules otherwise applicable to temporary injunctions. *See Norlyn,* 95 S.W.3d at 583–84.

The Legislature added section 15.52 in 1993[5] to clarify that it intended the Act largely to preempt the common law relating to enforcement of non-competition covenants. *Light v. Centel Cellular Co. of Tex.,* 883 S.W.2d 642, 643 (Tex.1994); *Butler,* 51 S.W.3d at 792. However, the Act preempts only what it states that it preempts. To determine what section 15.51(a) preempts, we must examine what it purports to govern generally. If section 15.51(a) governs *preliminary relief,* then it preempts the equitable rules applicable to preliminary relief, such as temporary injunctions. If, in contrast, section 15.51(a) governs only *final remedies,* then it preempts only those rules applicable to final remedies, but not those rules applicable to preliminary relief, such as temporary injunctions.

 Statutory interpretation is a question of law. *In re Canales,* 52 S.W.3d 698, 701 (Tex.2001). Our primary goal is to ascertain and effectuate the Legislature's intent. *Id.* at 702. In doing so, we begin with the statute's plain language because we assume that the Legislature tried

---

4. *See* TEX. BUS. & COM.CODE ANN. §§ 15.50–15.52 (Vernon 2002).

5. *See* Act of May 29, 1993, 73rd Leg., R.S., ch. 965, § 3, 1993 Tex. Gen. Laws 4201, 4201–02 (eff.Sept.1, 1993) (codified at TEX. BUS. & COM. CODE ANN. § 15.52 (Vernon 2002)).

to say what it meant and, thus, that its words are the surest guide to its intent. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865–66 (Tex. 1999). In ascertaining legislative intent, we do not confine our review to isolated statutory words, phrases, or clauses, but we instead examine the entire act. *Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 90 (Tex.2001). We may also consider, among other things, the statute's objectives; common law, former law, and similar provisions; and the consequences of the statutory construction. Tex. Gov't Code Ann. § 311.023(1)-(7) (Vernon 1998); *Canales*, 52 S.W.3d at 702. We construe words according to their common usage, unless they have acquired a technical or particular meaning. *See* Tex. Gov't Code Ann. § 311.011(a), (b).

 Applying these rules, we conclude that the Legislature intended that section 15.51(a) govern only final remedies. Subsection (a) speaks of "award[ing]" the promisee "damages" or injunctive relief "for a breach by the promisor." Tex. Bus. & Com.Code Ann. § 15.51(a). The terms "award" and "damages" generally describe final remedies. *See* Black's Law Dictionary 132, 393 (7th ed.1999) (defining "award" as "[a] final judgment or decision, [especially] one by an arbitrator or by a jury assessing damages"; defining "damages" as "[m]oney claimed by, or ordered to be paid to, a person as compensation for

loss or injury"). The use within a sentence of these relief-related terms, which concern final remedies, implies that the use in the same sentence of another relief-related term ("injunction") also concerns final relief.

Our interpretation of subsection (a) is supported by the remaining provisions of section 15.51, which also concern final remedies. *See Meritor Auto.*, 44 S.W.3d at 90 (instructing to consider entire act in construing part of act). For example, subsection (b) assigns the burden of persuasion to a different party depending on whether the ancillary agreement is for personal services. Tex. Bus. & Com.Code Ann. § 15.51(b).[6] Subsection (b)'s burden-shifting provisions make no sense in the context of a temporary injunction, in which the applicant always has the burden to show entitlement to the writ. *See Butnaru*, 84 S.W.3d at 204. Because we must presume that the Legislature intended a reasonable result, we interpret subsection (b) to apply only to final adjudications, not to the pursuit of preliminary relief. *See* Tex. Gov't Code Ann §§ 311.021(3), 311.023(5) (instructing that court may consider consequences of statutory construction and should presume that reasonable result is intended). Similarly, subsection (c) speaks of "reform[ing] the covenant" to make it reasonable. Tex. Bus. & Com.Code Ann. § 15.51(c).[7] Reformation is generally

---

6. "If the primary purpose of the agreement to which the covenant is ancillary is to obligate the promisor to render personal services, for a term or at will, the promisee has the burden of establishing that the covenant meets the criteria specified by Section 15.50 of this code. If the agreement has a different primary purpose, the promisor has the burden of establishing that the covenant does not meet those criteria. For the purposes of this subsection, the 'burden of establishing' a fact means the burden of persuading the triers of fact that the existence of the fact is more probable than its nonexistence."

Tex. Bus. & Com.Code Ann. § 15.51(b) (Vernon 2002).

7. "If the covenant is found to be ancillary to or part of an otherwise enforceable agreement but contains limitations as to time, geographical area, or scope of activity to be restrained that are not reasonable and impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee, the court shall reform the covenant to the extent necessary to cause the limitations contained in the covenant as to time, geographical area, and scope of activity

a final remedy. More importantly, subsection (c) also provides that, after a trial court reforms a non-competition covenant to make it reasonable, the court cannot then award the promisor damages based on the promisee's breach, but is limited to enforcing the newly reformed covenant by injunction. *Id.* § 15.51(c). This language clearly refers to a final remedy.

▇▇▇▇▇▇ Moreover, the Act's overall purpose is to make non-competition covenants enforceable when they meet certain criteria and to provide the means to enforce those covenants. *See id.* § 15.50 (establishing criteria for non-competition covenant's enforceability); *see also* Philip J. Pfeiffer & W. Wendell Hall, *Employment & Labor Law*, 44 SW. L.J. 81, 134 (1990).[8] In contrast, the purpose of a temporary injunction is not necessarily to enforce anything, but is instead to preserve the status quo and to prevent probable, irreparable injury pending trial. *See Butnaru*, 84 S.W.3d at 204. Interpreting section 15.51(a) to govern only final remedies brings that section in line with the Act's overall purpose of enforcement.

▇▇ Accordingly, we hold that section 15.51(a) governs final remedies available upon adjudication of the issues relating to a non-competition covenant's enforcement. *See id.* § 15.51(a). Because section 15.51(a) does not govern preliminary relief, it does not preempt the law that generally applies to preliminary relief, including the equitable rules that apply to temporary injunctions. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 65.001, 65.011(3); Tex.R. Civ. P. 693.

### 2. *Butler v. Arrow Mirror & Glass Co.* and Other Case Law

We also relied in *Norlyn* on *Butler v. Arrow Mirror & Glass Inc.*, 51 S.W.3d 787 (Tex.App.-Houston [1st Dist.] 2001, no pet.). *Norlyn*, 95 S.W.3d at 583. The *Butler* Court relied on sections 15.51(a) and 15.52 of the Act to hold that the Act relieved the applicant seeking a *permanent* injunction from the burden of proving irreparable injury for which it had no adequate legal remedy. *Butler*, 51 S.W.3d at 795. *Butler's* holding is consistent with our interpretation of sections 15.51(a) and 15.52, but its holding does not support the holding in *Norlyn*, which concerned *tempo-*

to be restrained to be reasonable and to impose a restraint that is not greater than necessary to protect the goodwill or other business interest of the promisee and enforce the covenant as reformed, except that the court may not award the promisee damages for a breach of the covenant before its reformation and the relief granted to the promisee shall be limited to injunctive relief. If the primary purpose of the agreement to which the covenant is ancillary is to obligate the promisor to render personal services, the promisor establishes that the promisee knew at the time of the execution of the agreement that the covenant did not contain limitations as to time, geographical area, and scope of activity to be restrained that were reasonable and the limitations imposed a greater restraint than necessary to protect the goodwill or other business interest of the promisee, and the promisee sought to enforce the covenant to a greater extent than was necessary to protect

the goodwill or other business interest of the promisee, the court may award the promisor the costs, including reasonable attorney's fees, actually and reasonably incurred by the promisor in defending the action to enforce the covenant."

Tex. Bus. & Com.Code Ann. § 15.51(c).

8. "Further, with the enactment of an amendment to [the Act], the legislature established the criteria for enforceability of covenants not to compete and the procedures and remedies in such enforcement actions. The legislature also reversed the supreme court's presumption that the public policy of Texas is against the enforcement of noncompetition agreements except under certain limited circumstances, by enacting a statute designed to enforce such agreements."

*Id.*, 44 SW. L.J. at 134.

*rary*-injunctive relief. *See & compare Norlyn,* 95 S.W.3d at 585.

One court of appeals has declined to follow *Norlyn,* instead applying equitable temporary-injunction rules. *See NMTC Corp. v. Conarroe,* 99 S.W.3d 865, 868–69 (Tex.App.-Beaumont, 2003, no pet. h.). Other courts, both before and after section 15.52 was added, have applied or mentioned the usual equitable temporary-injunction rules even when the applicant's suit sought to enforce an agreement falling under the Act.[9]

In contrast, the Dallas Court of Appeals has held that section 15.51(a) supersedes equitable temporary-injunction requirements, including the burden of proving irreparable injury. *See Hilb, Rogal & Hamilton Co. of Texas v. Wurzman,* 861 S.W.2d 30, 33 (Tex.App.-Dallas 1993, no writ); *Recon Exploration, Inc. v. Hodges,* 798 S.W.2d 848, 851–53 (Tex.App.-Dallas 1990, no writ); *see also McNeilus Cos. v. Sams,* 971 S.W.2d 507, 510, 510 n. 3 (Tex. App.-Dallas 1997, no pet.) (merely recognizing *Recon's* rule).

We respectfully disagree with the holdings of the Dallas Court of Appeals in the context of temporary-injunctive relief.

First, we do not believe that the Legislature intended section 15.51(a) to supersede the law relating to preliminary relief. Second, we do not believe that the case law on which the Dallas court relied supports its holding. That line of case law provides that, when a statute defines the requirements for injunctive relief, the statutory requirements for obtaining that relief supersede equity and the common law. *See Hilb, Rogal & Hamilton,* 861 S.W.2d at 33; *Recon Exploration,* 798 S.W.2d at 852 (both citing *Tex. Farm Bureau Cotton Ass'n v. Stovall,* 113 Tex. 273, 253 S.W. 1101, 1108 (1923) and *Rio Grande Oil Co. v. State,* 539 S.W.2d 917 (Tex.Civ.App.-Houston [1st Dist.] 1976, writ ref'd n.r.e.)). We agree with this line of authority, but, because we have already concluded that section 15.51(a) does not govern preliminary relief, we disagree that this line of authority controls here. Moreover, we note that, in virtually every temporary-injunction case that we have found falling within the line of authority on which the Dallas court relied, (1) the statute contained language expressly governing or language broad enough to govern preliminary injunctive relief[10] or (2) the temporary injunction was issued to stop the op-

---

**9.** *See Anderson Chem. Co. v. Green,* 66 S.W.3d 434, 437 (Tex.App.-Amarillo 2001, no pet.); *Ireland v. Franklin,* 950 S.W.2d 155, 157 (Tex. App.-San Antonio 1997, no writ); *Miller Paper Co. v. Roberts Paper Co.,* 901 S.W.2d 593, 597 (Tex.App.-Amarillo 1995, no writ); *Car Wash Sys. of Tex., Inc. v. Brigance,* 856 S.W.2d 853, 859 (Tex.App.-Fort Worth 1993, no writ); *Tom James Co. v. Mendrop,* 819 S.W.2d 251, 252 (Tex.App.-Fort Worth 1991, no writ); *Isuani v. Manske-Sheffield Radiology Gr., P.A.,* 798 S.W.2d 346, 350 (Tex.App.-Beaumont 1990), *rev'd on grounds of mootness,* 802 S.W.2d 235, 237 (Tex.1991).

**10.** *See Texas Farm Bureau Cotton Ass'n v. Stovall,* 113 Tex. 273, 253 S.W. 1101, 1107–08 (1923) (considering Act of Mar. 1, 1921, 37th Leg., R.S., ch. 22, § 17, 1921 Tex. Gen. Laws 45, 51 (appearing at Tex. Agric. Code Ann. § 52.131(b) (Vernon 1995))); *Republic*

*W. Ins. Co. v. State,* 985 S.W.2d 698, 700–01, 703, 707 (Tex.App.-Austin 1999, pet. dism'd w.o.j.) (considering Act of May 27, 1985, 69th Leg., R.S., ch. 918, § 2, 1985 Tex. Gen. Laws 3088, 3090, *amended by* Act of May 27, 1989, 71st Leg., R.S., ch. 1025, § 1, 1989 Tex. Gen. Laws 4122, 4122 (appearing at Tex. Ins.Code Ann. §§ 101.103, 101.105 (Vernon Pamph. 2003))); *MortgageBanc & Trust, Inc. v. State,* 718 S.W.2d 865, 869 (Tex.App.-Austin 1986, no writ) (considering Act of May 30, 1983, 68th Leg., R.S., ch. 465, § 1, 1983 Tex. Gen. Laws 2688, 2712–13 (appearing at Tex.Rev. Civ. Stat. Ann. art. 581–32(A) (Vernon Supp. 2003))); *Ruenes v. Nueces County,* 574 S.W.2d 854, 856 (Tex.Civ.App.-Corpus Christi 1978, no writ) (considering Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 989, *amended by* Act of May 29, 1975, 64th Leg., R.S., ch. 647, § 1, 1975 Tex.

ponent from violating a law, which order—whether the courts expressly stated it or not—was appropriate for the separate reason that trial courts have a duty to restrain violations of the law when shown.[11] *See, e.g., Houston Compressed Steel Corp. v. State,* 456 S.W.2d 768, 775 (Tex.Civ. App.-Houston [1st Dist.] 1970, no writ) ("[W]hen it is determined that the law is being violated it is the province and the duty of the court to restrain it."). Section 15.51(a) does not fit into either of these categories.

### 3. Conclusion

■ We hold that the Act does not preempt the equitable principles, including the need to show irreparable injury for which legal remedy is inadequate, for obtaining temporary-injunctive relief. We overrule *Norlyn* to the extent that it holds otherwise.

### B. Whether Cardinal Had to Show Irreparable Injury to the Extent that It Sought the Temporary Injunction to Protect Trade Secrets

■ In its brief and by post-submission letter, Cardinal next argues that, to the extent that it sought a temporary injunction in support of its common-law claims for unfair competition and misappropriation of trade secrets, the "inevitable disclosure" doctrine [12] effectively relieved Cardinal of having to show irreparable injury for which it had no adequate legal

---

Gen. Laws 1962, 1962 (appearing at Tex. Civ. Prac. & Rem.Code Ann. § 125.022 (Vernon 1997))); *Rio Grande Oil Co. v. State,* 539 S.W.2d 917, 921 (Tex.Civ.App.-Houston [1st Dist.] 1976, writ ref'd n.r.e.) (considering same statute as in *MortgageBanc & Trust,* supra); *Tex. Pet Foods, Inc. v. State,* 529 S.W.2d 820, 830 (Tex.Civ.App.-Waco 1975, writ ref'd n.r.e.) (considering Act of May 12, 1969, 61st Leg., R.S., ch. 273, § 1, 1969 Tex. Gen. Laws 817, 831–32 (appearing at Tex. Water Code Ann. § 7.032 (Vernon 2000))); *Gulf Holding Corp. v. Brazoria County,* 497 S.W.2d 614, 616–17, 618–19 (Tex.Civ.App.-Houston [14th Dist.] 1973, writ ref'd n.r.e.) (quoting and considering former Tex.Rev.Civ. Stat. art. 5415d (appearing at Tex. Nat. Res. Code Ann. § 16.018 (Vernon 2001))); *Houston Compressed Steel Corp. v. State,* 456 S.W.2d 768, 775 (Tex.Civ.App.-Houston [1st Dist.] 1970, no writ) (considering same statute as in *Tex. Pet Foods,* supra); *see also W. Tex Utils. Co. v. Farmers' State Bank in Merkel,* 68 S.W.2d 648, 649–50 (Tex.Civ.App.-Eastland 1934, no writ) (recognizing rule applicable to statutes such as former Tex.Rev.Civ. Stat. arts. 4635, 4636 (appearing at Tex. Fam.Code Ann. §§ 6.501–6.503 (Vernon 1998 & Supp. 2003)) and 1925 Tex.Rev.Civ. Stat. 1280 (appearing at former Tex.Rev.Civ. Stat. art. 4668)).

11. *See Biggs v. Red Bluff Water Power Control Dist.,* 131 S.W.2d 274, 275–76 (Tex.Civ.App.-El Paso 1939, writ ref'd) (enforcement of laws that have among purposes maintaining water purity, preserving water, and protecting public); *Republic W. Ins.,* 985 S.W.2d at 700–01, 703, 707 (violation of Insurance Code); *MortgageBanc & Trust,* 718 S.W.2d at 869 (violation of Securities Act); *Ruenes,* 574 S.W.2d at 856 (violation of nuisance law); *Rio Grande Oil,* 539 S.W.2d at 921 (violation of Securities Act); *Tex. Pet Foods,* 529 S.W.2d at 830 (violation of Clean Air Act); *Gulf Holding,* 497 S.W.2d at 619 (violation of Open Beach Act); *Houston Compressed Steel,* 456 S.W.2d at 773, 775 (violation of Clean Air Act); *City of Corpus Christi v. Lone Star Fish & Oyster Co.,* 335 S.W.2d 621, 623–24 (Tex.Civ.App.-San Antonio 1960, no writ) (violation of zoning ordinance); *Gen. Southwestern Corp. v. State,* 333 S.W.2d 164, 169–71, 173 (Tex.Civ.App.-Houston 1960, writ ref'd n.r.e.) (violation of usury statute); *Gifford v. State,* 229 S.W.2d 949, 952 (Tex.Civ.App.-El Paso 1950, no writ) (violation of usury statute); *Tex. Fin. & Thrift Ass'n v. State,* 224 S.W.2d 522, 524–25 (Tex.Civ. App.-Dallas 1949, no writ) (violation of usury statute).

12. The inevitable disclosure doctrine has been described as follows:

[T]here are circumstances in which trade secrets inevitably will be used or disclosed, even if the defendant swears that he or she will keep the information confidential. Courts applying the doctrine have differed over its reach and the circumstances required for its application, but, generally

remedy. That is, Cardinal essentially urges us to recognize the doctrine, argues that it showed that it was entitled to invoke the doctrine, contends that the doctrine presumes irreparable injury, and claims that the trial court erred as a matter of law when it denied an injunction in the face of proof that the doctrine applied.

We have found no Texas case expressly adopting the inevitable disclosure doctrine, and it is unclear to what extent Texas courts might adopt it or might view it as relieving an injunction applicant of showing irreparable injury. *See Conley v. DSC Communications Corp.*, No. 05–98–01051–CV, 1999 WL 89955, at *3 (Tex.App.-Dallas Feb.24, 1999, no pet.) (not designated for publication) (finding no Texas case referring to doctrine of inevitable disclosure, but adopting test with similar attributes); Martin, *supra* note 12, at 1376–79, 1382–87 (questioning whether doctrine is compatible with Texas trade-secret law). However, the Dallas Court of Appeals has adopted what might be viewed as a modified version of the doctrine, holding that

> enjoining an employee from using an employer's confidential information is appropriate when it is *probable* that the former employee will use the confidential information for his benefit (or his new employer's benefit) or to the detriment of his former employer.

*Conley,* 1999 WL 89955, at *4 (emphasis in original); *see Rugen v. Interactive Bus. Sys., Inc.,* 864 S.W.2d 548, 552 (Tex.App.-Dallas 1993, no writ) ("Rugen is in possession of IBS's confidential information and is in a position to use it. Under these circumstances, it is probable that Rugen

will use the information for her benefit and to the detriment of IBS."); *Williams v. Compressor Eng'g Corp.,* 704 S.W.2d 469, 470–72 (Tex. App–Houston [14th Dist.] 1986, writ ref'd n.r.e.) (noting that jury found that trade secrets "probably would" be disclosed and holding that proof that trade secrets "will be used" by former employee to compete supports injunctive relief). Cardinal in essence asks us to adopt the doctrine as stated in *Conley* and *Rugen* (and other cases that it claims hold similarly) and to hold that the trial court abused its discretion as a matter of law in declining to enjoin Bowen under the doctrine.

We decline Cardinal's request. We need not decide whether to adopt the doctrine as stated in *Conley* and *Rugen* because, even if we were to adopt it, Bowen produced evidence that would defeat the doctrine's application here. For example, Bowen's evidence showed that Bowen did not take any confidential materials with him when he left Cardinal; that CompleteRx and Cardinal had in common only the few pharmacists and technicians noted above; that Bowen did not solicit any of these individuals; that some of CompleteRx's interim-pharmacy-staffing customers were those hospitals with which CompleteRx already had on-going relationships to provide pharmacy-management services; that CompleteRx had devised a business plan for its own interim-pharmacy-staffing business over a year before Bowen came aboard and that CompleteRx would have started this business with or without Bowen; that, as Bowen testified, CompleteRx's management "did not think that we needed

speaking, the doctrine applies when a defendant has had access to trade secrets and then defects to the trade secret owner's competition to perform duties so similar that the court believes that those duties cannot be performed without making use of trade secrets relating to the previous affiliation.

Linda K. Stevens, *Trade Secrets & Inevitable Disclosure,* 36 Tort & Ins. L.J. 917, 929 (Summer 2001); *see* Troy A. Martin, Comment, *The Evolution of Trade Secret Law in Texas: Is It Time to Recognize the Doctrine of Inevitable Disclosure?,* 42 S. Tex. L.Rev. 1361, 1375–76 (2001) [hereinafter "Martin"].

any of [Cardinal's confidential information]. We had information in-house and we had our own business plan and our own directions that we wanted to go in."; and that Bowen would not need to use Cardinal's confidential information to perform as CompleteRx's scheduler because the information that he needed to develop business contacts was available publicly. This evidence raises a reasonable inference that Bowen did not need to and would not use Cardinal's confidential information, *i.e.*, that disclosure and use was not probable. *See Conley*, 1999 WL 89955, at *4; *Rugen*, 864 S.W.2d at 552.

Accordingly, Cardinal has not demonstrated that the *Conley* and *Rugen* doctrine, were we to adopt it, would require the trial court to enjoin Bowen temporarily.

### Conclusion

The trial court's order can be sustained on the implicit finding that Cardinal had an adequate legal remedy. *See Butnaru*, 84 S.W.3d at 204 (requiring that temporary injunction applicant plead and prove cause of action, probable right to relief, *and* probable, imminent, and irreparable injury in interim). Accordingly, we need not address Cardinal's remaining arguments, and we overrule all of Cardinal's issues.

We affirm the trial court's order denying the temporary injunction.

A majority of the Justices of the Court voted to consider the cause en banc.

The en banc Court consists of Chief Justice RADACK and Justices HEDGES, TAFT, NUCHIA, JENNINGS, KEYES, ALCALA, and HANKS.

Justice HIGLEY, not participating.