Reversed and Rendered and Majority and Dissenting Opinions filed
November 9, 2004









Reversed and Rendered and
Majority and Dissenting Opinions filed November 9, 2004.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-03-01358-CV

_______________

 

T.F.W. MANAGEMENT, INC. AND TIMOTHY F. WILLIAMS,
Appellants

 

V.

 



WESTWOOD SHORES PROPERTY OWNERS ASSOCIATION, Appellee

 



 

On Appeal from the 411th District Court

Trinity County, Texas



Trial
Court Cause No. 17,734

 



 

                                   D
I S S E N T I N G   O P I N I O N

I respectfully dissent. 









The majority seems to acknowledge then ignore our standards
for review of the trial court=s decision to grant a temporary injunction.  The purpose of a temporary injunction is to
preserve the status quo of a litigation=s subject matter pending a trial on
the merits.  Butnaru v. Ford Motor Co.,
84 S.W.3d 198, 204 (Tex. 2002).  The
decision to grant or deny a temporary injunction is within the sound discretion
of the trial court.  Id.  We should reverse the grant of a temporary
injunction only if the trial court abused that discretion.  Id. 
We may not substitute our judgment for that of the trial court, but we
must determine only whether the trial court=s action was so arbitrary that it
exceeded the bounds of reasonable discretion. 
Id.  We should draw all
legitimate inferences from the evidence in the light most favorable to the
judgment of the trial court.  Tom James
of Dallas, Inc. v. Cobb, 109 S.W.3d 877, 883 (Tex. App.CDallas 2003, no pet.).  Additionally, we should not assume that the
evidence presented at a preliminary hearing will be the same as the evidence
developed at a full trial on the merits. 
Id. at 885.   

An applicant for a temporary injunction must plead and prove
(1) a cause of action against the defendant, (2) a probable right to the relief
sought, and (3) a probable, imminent, and irreparable injury in the
interim.  Butnaru, 84 S.W.3d at
204.  These are the only issues before
the trial court; the underlying merits of the case are not presented.  See Tom James, 109 S.W.3d at 882.  Therefore, an appeal from an order granting a
temporary injunction does not present for appellate review the ultimate legal
issues of the case.  Id. at
883  We may review only whether the trial
court abused its discretion in concluding that an applicant showed a cause of
action, a probable right to the relief sought, and a probable, imminent, and
irreparable injury.  See id.

Discussion

The assignment of water rights requires TFW to maintain the
water at a sufficient level so that Association members may also enjoy the
benefits of Westwood Lake for aesthetic and recreational purposes so long as
water suitable for these purposes is reasonably available from Trinity River
Authority of Texas [TRA] under terms substantially similar to those contained
within the [Water Sales Agreement], between [WSI], and [TRA] in effect as of
the date of this Assignment of Water Rights, with adjustments for
inflation.  








In its first and second issues, TFW claims that by issuing
the injunction, the trial court impliedly found that under the contract (1) the
Lake water level was inadequate, and (2) the terms of a current Water Sales
Agreement were substantially similar to the terms of the Water Sales Agreement
in effect in 1996.  TFW further claims
the trial court abused its discretion by making these findings because they are
not supported by any probative evidence. 
However, because the underlying merits of a case were not before the
trial court, I do not agree with appellant=s contention that issuance of the
injunction implies the trial court made findings on these ultimate legal
questions.  Therefore, an appeal of the
temporary injunction does not present for review the ultimate questions of
whether TFW is in breach of the contract because the water level was
insufficient, or because water is available under terms similar to the previous
contract.  See id. at 882B83 (holding that the ultimate
question of whether covenants not to compete were enforceable was not at issue
in an appeal from the denial of a temporary injunction).  We may review only the trial court=s exercise of discretion in
determining whether appellee showed it had a probable right to relief in its
breach of contract claim.  See id.
at 883.

                                                Probable
Right to Relief

Water
Level








First, TFW claims there was no evidence that the Lake water
level was inadequate.  It notes that a
TFW representative testified the water level was adequate for recreational and
aesthetic purposes.  However, the
Association presented evidence that its members had complained the Lake
conditions were inadequate, fishing in certain areas was no longer possible,
and some boat docks were unusable because of the low level of water.  In addition, one homeowner had sold his home
on the Lake partially because he was frustrated with the conditions resulting
from the low water level.  When a trial
court bases a decision concerning the grant of a temporary injunction on
conflicting evidence there is no abuse of discretion.  Id. at 883.  Based on the conflicting evidence, I would
hold the trial court did not abuse its discretion in concluding the Association
proved it had a probable right to relief based on TFW=s failure to maintain an adequate
water level. 

Terms of Water Sales Agreement

TFW also claims that under the plain language of the
contract, it is relieved of any obligation to supply water to the Lake because
water is no longer available from TRA under terms substantially similar to
those in the Water Sales Agreement. 
Under the Water Sales Agreement WSI paid $1551.00 per year for up to 470
acre feet of water ($3.30 per acre foot). 
In 2000, TRA raised the price of water to $35 per acre foot, with rates
set to increase an additional $20 per acre foot every two years through 2006.  TFW claims that considering this price
increase, there is no evidence the terms contained in the previous Water Sales
Agreement are Asubstantially similar@ to terms available to TFW
today.  Both parties agree that the price
of water is the only term in the agreement that has changed. 








The assignment of water rights requires TFW to maintain the
water at a level sufficient for aesthetic and recreational enjoyment so long as
water Asuitable for these purposes@ is available under terms
substantially similar to those contained within the Water Sales Agreement.  The deed conveying the lake to the
Association is similar, but it requires maintenance so long as water Asufficient for these purposes@ is available.  To determine the intent of the parties to a
contract, we will consider all writings that pertain to the same
transaction.  DeWitt Co. Elec. Co-op.,
Inc. v. Parks, 1 S.W.3d 96, 102 (Tex. 1999).  Neither the deed nor the assignment requires
TFW to purchase the same amount of water previously purchased under the Water Sales
Agreement.  The contractual provisions
require only that water Asufficient@ or Asuitable@ be available.  The
Association presented evidence that until 2000, the water level of the lake was
sufficient for recreational and aesthetic purposes.  It presented additional evidence that from
1995 to 2000, less than 16 acre feet of water were pumped into the lake from
TRA each year.  Under the Water Sales
Agreement TFW could use up to 470 acre feet of water from TRA each year;
however less than 16 acre feet was sufficient and suitable to maintain the
water level for aesthetic and recreational purposes.  Accordingly, I would hold that the trial court
did not abuse its discretion in concluding that the above estimated amount of
water is available to TFW under substantially similar terms.             Although
WSI paid $3.30 per acre foot of water, this rate was applicable only when over
400 acre feet of water were purchased. 
According to the rate schedule in effect at that time, which was
incorporated into the Water Sales Agreement, the minimum charge was $500 per
year for up to 50 acre feet of water. 
Under the revised water rates, the minimum charge is $1,000 for up to 10
acre feet of water.  However, the cost
for 20 acre feet was $1,100 in 2002, and is currently $1,500.  Based on this cost increase for the amount of
water sufficient to maintain the water level of the lake, I cannot conclude
that the trial court abused its discretion in determining that the Association
had established a probable right to the relief on the ground that water was
available to TFW under substantially similar terms.

Additionally, a provision that water, under substantially
similar terms, be available Awith adjustments for inflation.@ is included in the assignment of
water rights.  The Association presented
evidence that the rate increase in 2000 was based on the cost of water in
general and inflation.  In reviewing the
trial court=s decision, we must draw all
legitimate inferences from the evidence in the light most favorable to the
grant of the temporary injunction.  See
Tom James, 109 S.W.3d at 883.  Based
on the evidence in the record, it is my considered opinion the trial court did
not abuse its discretion in determining that the Association established a
probable right to the relief based on the cost of water with adjustments for
inflation.

Specific Performance








In its third issue, TFW contends the temporary injunction
impermissibly requires specific performance of the contract.  Specific performance of a contract will be
granted only if there is a mutuality of remedy, which TFW claims is not present
here.  See Smith v. Nash, 571
S.W.2d 372, 375 (Tex. App.CTexarkana 1978, no writ); see Fed. Sign v. Texas S. Univ.,
951 S.W.2d 401, 409 (Tex. 1997) (noting mutuality of remedy is the right of
both parties to a contract to obtain specific performance) superseded by
statute on other grounds as stated in Gen. Servs. Comm=n v. Little-Tex. Insulation Co., 38 S.W.3d 591, 593 (Tex.
2001).  However, by issuing a temporary
injunction a trial court is not enforcing a contract, but preserving the status
quo of a litigation=s subject matter pending a trial on the merits.  See Cardinal Health Staffing Network, Inc. v.
Bowen, 106 S.W.3d 230, 239 (Tex. App.CHouston [1st Dist.] 2003, no pet.)
(citing Butnaru, 84 S.W.3d at 204). 
Accordingly, the trial court was not requiring specific performance of
the contract.  Nevertheless, mutuality of
remedy is available in this case.  Under
the contract, the Association is required to accept the burden of TFW=s water rights and pay certain taxes
and assessments.  Accordingly, I would
overrule TFW=s third issue.  

Terms of Injunction

In its fourth issue, TFW claims the trial court abused its
discretion by imposing new duties and obligations on TFW that were not
contemplated by the contract.  Under the
injunction, TFW was directed to:

maintain the water level of Westwood Lake no lower
from the top of the drain on the lake than the deficiency of average rainfall
based on the records for reporting at Bush Intercontinental Airport as reported
by the Houston Chronicle on Monday of each week. 

 








Additionally, under the injunction TFW=s obligation was limited to a maximum
of 200 acre feet of water per year. TFW claims the trial court impermissibly
altered certain terms in the original contract. 
This claim is based on TFW=s assertion that its contractual
obligation is limited to maintaining the water at a level appropriate for
aesthetic and recreational purposes. We agree with TFW=s contention that a court, while
construing a contract, may not revise it so as to impose additional duties on a
party.  See Royal Indem. Co. v.
Marshall, 388 S.W.2d 176, 181 (Tex. 1965). 
However, as previously noted, the purpose of a temporary injunction is
to preserve the status quo of the litigation=s subject matter pending a trial on
the merits.  Butnaru, 84 S.W.3d at
204.  By issuing a temporary injunction,
a trial court is not enforcing a contract with altered terms, but preserving
the status quo.  See Cardinal Health
Staffing Network, Inc., 106 S.W.3d at 239 (noting that the purpose of a
temporary injunction is not to enforce anything).  A trial court exceeds its authority if its
temporary injunction order changes the status quo.  Barnstone v. Robinson, 678 S.W.2d 562,
563 (Tex. App.CHouston [14th Dist.] 1984, writ dism=d). 


The status quo is the last, actual, peaceable, non‑contested
status that preceded the pending controversy. 
State v. Southwestern Bell Tel. Co., 526 S.W.2d 526, 528
(Tex. 1975).  The Association presented
evidence that prior to 2000, the water level of the Lake was to the top of a
drainpipe, a level which was in compliance with the contract.  This level fluctuated by approximately one
foot during that time.  The temporary
injunction requires TFW to maintain the water level no lower from the top of
the drain than the deficiency of average rainfall in Houston.  In setting this requirement, the trial court
indicated that the lowest deficiency of average rainfall of the year had been
ten to twelve inches.  Therefore, because
this requirement will keep the water at a level that is similar to the water
level prior to 2000, it does not change the status quo.  Additionally, under the injunction, TFW is
not required to pump more than 200 acre feet of water into the Lake per
year.  The trial court set this
limit  based on the increased price of
water and the TFW=s prior contract with TRA for 470 acre feet of water.  There was no evidence that more than 200 acre
feet of water would be necessary to maintain the water at the required level
under the injunction.  Consequently, I
cannot conclude that the terms of this temporary injunction change the status
quo.  Accordingly, it is my considered
opinion that the trial court did not exceed its authority.

Balance of Equities








In its fifth issue, TFW contends the trial court abused its
discretion by failing to balance the equities between the parties.  In considering an application for a temporary
injunction, a trial court balances the equities between the parties as well as
the resulting conveniences and hardships. 
Universal Health Servs., Inc. v. Thompson, 24 S.W.3d 570, 578
(Tex. App.CAustin 2000, no pet.).  A trial court may consider whether the
applicant would suffer significant or slight injury if the injunction were
erroneously denied, and whether the injury to the opposing party would be significant
or slight if the injunction were erroneously granted.  NMTC Corp. v. Conarroe, 99 S.W3d 865,
869 (Tex. App.CBeaumont 2003, no pet.).  TFW claims the trial court failed to consider
the equitable hardships faced by TFW, such as the current high cost of water
and the requirement that it maintain the Lake at a level not contemplated by
the contract.  However, the record
indicates the trial judge balanced the hardship of TFW against the hardship of
the Association.  In its Temporary
Injunction Order, the trial court noted, as supported by the record, that if
TFW continued to inadequately replenish the Lake, dry areas around the Lake
would increase preventing the Association members from using even more portions
of the Lake.  At the hearing on the
motion for the temporary injunction, the court indicated that it was
considering the rainfall in the area as well as the increased cost of water in
setting the parameters of TFW=s obligations.  Considering
the supporting evidence, I would conclude that the trial court did not abuse
its discretion when it balanced equities in favor of TFW.

Irreparable Harm








In its sixth issue, TFW claims the trial court abused its
discretion by finding appellee would be irreparably harmed if the temporary
injunction were denied.  Harm is
irreparable if the injured party cannot be adequately compensated in damages or
if the damages cannot be measured by any certain pecuniary standard.  Butnaru, 84 S.W.3d at 204.  The Association presented testimony and
photographs depicting the water level at the time of the hearing to support its
contention that its members cannot enjoy the recreational and aesthetic
benefits of the Lake that they once enjoyed. 
Banks of the Lake where the water had receded were Aunsightly@ and sometimes emanated a bad
odor.  Several homes were on these
banks.  Boat docks that had been built in
the water were on dry land and bulkheads were exposed.  One former Association member testified that
he sold his home because the water level of the Lake decreased, and he could no
longer fish from his property.  This is
evidence of irreparable harm.  See
Hayter v. Fern Lake Fishing Club, 318 S.W.2d 912, 914 (Tex. App.CBeaumont 1958, no writ); Positive
Feed, Inc. v. Wendt, Nos. 01-96-00614-CV, 01-96-01250-CV, 1998 WL 43321, at *10 (Tex. App.CHouston [1st Dist.] Feb. 5, 1998,
pet. denied) (not designated for publication) (both holding the loss of
enjoyment of one=s home constitutes irreparable injury for purposes of
injunctive relief). 

TFW claims that the Association presented no evidence of
injury because the photographs they submitted depicting the condition of the
Lake were taken on random dates and did not accurately represent the average
water level of the Lake.  Because the
evidence on this issue was conflicting, I would hold that the trial court did
not abuse its discretion by finding the Association would suffer irreparable
harm.  See Tom James, 109 S.W.3d
at 883.  Accordingly, I would affirm the
trial court=s order granting a temporary
injunction.

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered
and Majority and Dissenting Opinions filed November 9, 2004.

Panel consists of
Justices Fowler, Edelman and Seymore. 
(Fowler, J., majority.)