Opinion issued April 17, 2008










     


In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-05-00904-CV
____________

HOWETH INVESTMENTS, INC. AND JACK HOWETH, AS TRUSTEE
FOR THE 881 BROGDEN TRUST AND THE 901 BROGDEN TRUST,
ASSIGNEES OF HOWETH INVESTMENTS, INC., Appellants

V.

THE CITY OF HEDWIG VILLAGE, THE CITY OF HEDWIG VILLAGE
PLANNING & ZONING COMMISSION, S. FRANK WHITE, ROBERT A.
WIENER, NORMAN A. WARD, AND KATHERINE VAZQUEZ, Appellees




On Appeal from 189th District Court
Harris County, Texas
Trial Court Cause No. 2000-53368



 
O P I N I O N
 
          Appellants, Howeth Investments, Inc. and Jack Howeth, as trustee for the 881
Brogden Trust and the 901 Brogden Trust, assignees of Howeth Investments, Inc.
(collectively, the “Howeth parties”), appeal from a final, take-nothing judgment
rendered after a bench trial. We determine (1) whether the Howeth parties have
timely challenged all bases on which the trial court’s judgment rests; (2) whether the
trial court erred in denying mandamus, injunctive, and declaratory relief to compel
appellee the City of Hedwig Village Planning and Zoning Commission (“the
Commission”) to issue certificates of no action on the Howeth parties’ plat
applications for two lots of property located within the City of Hedwig Village (“the
City”); and (3) whether an ordinance of the City that the Commission interpreted to
deny the Howeth parties’ plat applications for subdividing these two properties was
unconstitutionally vague, facially or as applied. We affirm.
Background
          Jack Howeth was a real-estate developer and also the former mayor of a
neighboring municipality. He was also the president of Howeth Investments, Inc. and
the trustee for the two trusts named above, which in turn were assignees of Howeth
Investments, Inc. Howeth Investments, Inc. was in the business of purchasing and
developing real estate. 
          Two adjacent, undivided properties within the City are involved in this lawsuit. 
Both properties are located on Brogden Street. One of the properties was located at
901 Brogden, which the Howeth parties designate as “the Jennings property.” The
other was located at 881 Brogden, which the Howeth parties designate as “the Dorsey
property.” We refer to the individual pieces of property as the Jennings property and
the Dorsey property, while we refer to them together as “the Brogden properties.” 
          In March 2000, Howeth Investments, Inc. contracted to purchase the Brogden
properties. The contracts for sale of the Brogden properties provided that Howeth
Investments, Inc. did not have to purchase the respective piece of property if it was
unable to obtain approval of a subdivision plat dividing the Brogden properties into
three lots.



          In June 2000, the Brogden properties’ sellers submitted preliminary plat
applications (“the June preliminary plat” applications) to the Commission for
subdivision of the Brogden properties. The June preliminary plat applications
proposed subdividing each property into two lots. The only way to subdivide the
Brogden properties separately while still meeting the City’s other development
requirements was to subdivide each property into two sub-lots, with one of the
subdivided lots on each piece of property having a “flag” configuration. A flag
configuration is one in which one lot is behind the other relative to the street, so that
the back lot has access to the street only by virtue of a long driveway; the driveway
appears from the air to resemble a flagpole, and the rear lot appears to be the flag atop
the pole. In a flag configuration, the owner of the rear lot has fee simple title to the
“flag pole” driveway. 
          The Commission scheduled a hearing for July 5, 2000 to consider the June
preliminary plat applications. At the hearing, the Howeth parties presented the
applications on behalf of the property owners. The Howeth parties relied on section
16-38 of the City’s Code of Ordinances for approval of the flag-lot configuration:
Sec. 16-38. Lots, general provisions.
 
The purpose of this section is to provide general overall
guidelines for the establishment of individual lots within a subdivision.
 
. . .
 
(c)Key or Flag Shaped Lots. Unless unavoidable, key or flag
shaped lots shall not be permitted. . . . .

Code of Ordinances, City of Hedwig Village § 16-38 (Ord. No. 345, § 3.13, 4-11-91). 
Much of the hearing focused on the meaning of “unavoidable” in section 16-38. A
ruling on the applications was deferred until the Commission’s next regular meeting
(August 2, 2000), so that the City’s attorney, Alan Petrov, could research the meaning
of “unavoidable” and so that the City’s Building Official, Paul Addington, could give
input on the applications.
          On July 15, 2000, the Howeth parties sought certificates of no action from the
Commission because it had allegedly not acted timely on the June preliminary plat
applications under the timelines established by the Texas Local Government Code. 
See Tex. Loc. Gov’t Code Ann. § 212.009(a) (Vernon 1999) (“The municipal
authority responsible for approving plats shall act on a plat within 30 days after the
date the plat is filed. A plat is considered approved by the municipal authority unless
it is disapproved within that period.”) (emphasis added); id. § 212.009(d) (Vernon
1999) (requiring that planning commission issue certificate of no action upon request
if commission fails to approve plat within 30-day period). The City’s attorney denied
the request, asserting that section 212.009 did not apply to preliminary plats.
          At the August 2, 2000 Commission hearing, the Howeth parties again
participated in a discussion of the June preliminary plat applications. As at the July
15 hearing, much of the August 2 hearing focused on the meaning of “unavoidable”
in section 16-38. Petrov told the Commission that the term unavoidable was not
defined in the ordinance, that no case law or legislative history shed light on its
meaning, and that it was thus “in the discretion of” the Commission “to come to an
agreement on the definition of” the term. Petrov advised that he saw two reasonable
definitions of unavoidable: (1) that development of the land was otherwise
impossible, an interpretation requiring denial of the preliminary plat applications
because the lots could be developed with one home per property, and (2) that
subdivision of the land was otherwise impossible, an interpretation that could allow
approval of the preliminary plats because neither of the Brogden properties could be
subdivided into anything but flag lots without violating the City’s length and width
requirements for lots. Although Petrov believed that interpretation (2) was the more
logical, he advised the Commission that it was in “the Commission’s discretion to
decide what ‘unless unavoidable’ meant, noting that whatever conclusion the
Commission reached, a few words should be added to the sections of the Code to
provide clarification.” A divided Commission thereafter voted to deny the June
preliminary plat applications. Those voting to deny the applications were appellees
S. Frank White, the Commission Chairman, and Robert A. Weiner and Norman E.
Ward, Commission members. When polled, White and Ward expressed that they did
not want flag lots for aesthetic, density, or other reasons that did not involve
interpretation of “unavoidable,” although Weiner’s statement (and a later statement
by White) indicated that they had adopted interpretation (1) of “unavoidable.” A
written decision later sent to the Howeth parties indicated that the decision had been
based in part on the flag lots’ not having been unavoidable, as the Commission had
interpreted that term.
          On August 13, 2000, the Brogden properties’ sellers simultaneously submitted
new preliminary and final plat applications for the Brogden properties (“the August
preliminary and final plat” applications). Rather than proposing flag configurations,
the August preliminary and final plats gave the rear subdivided lots on each of the
Brogden properties ingress and egress by virtue of permanent easements over the
front subdivided lots. The subdivision configuration for each lot was similar to that
submitted in the June preliminary plats, in that a long driveway resembling a flagpole
was still used for access to the rear lot; however, the sizes of the two sub-lots were
modified in recognition of the use of an easement, rather than fee simple title, for that
driveway. At the Commission’s August 30, 2000 meeting, after a discussion
including the Howeth parties, a divided Commission voted to deny the August
preliminary and final plat applications. Those voting against the applications were
White, Ward, Weiner, appellee Kathy H. Vazquez (a Commission member), and two
other Commission members who have not been sued.
          Some time after the August 30 hearing, the City imposed a moratorium on plat
applications in order to discuss the issue of flag lots. In March 2001, the City
Council of Hedwig Village amended the City’s Code of Ordinances to prohibit flag
lots entirely. Code of Ordinances, City of Hedwig Village § 74-123(3) (Ord. No. 498,
§ 1(16-38), 3-29-2001). 
          In September 2000, during the moratorium on plat applications and despite the
rejection of both the June preliminary plat applications and the August preliminary
and final plat applications, Howeth Investments, Inc. nonetheless purchased the
Dorsey and Jennings properties. The appellant trusts eventually obtained title to the
properties. In May 2001, the Brogden property sellers assigned their interest in the
June preliminary plat applications and the August preliminary and final plat
applications to the appellant trusts.
          The Howeth parties eventually commenced development of a home on the front
portion of the Jennings and Dorsey properties (what the Howeth parties considered
to be the front lots of each piece of property, as they proposed subdividing them). 
The Howeth parties alleged that, during the building process, they were singled out
by harsh or retaliatory enforcement of ordinances against their construction and their
realtor, by delay in the approval of building permits for the construction, and by the
filing of allegedly wrongful lis pendens on the Brogden properties. As of the time of
trial, the Howeth parties had not yet completed either home on either of the Brogden
properties.
          In October 2000, the Howeth parties sued the City, the Commission, and White
in his official capacity for violations of the Texas Open Meetings Act, for regulatory 
takings, and for mandamus and declaratory relief. In April and June of 2002, Judge
Jeff Work, who was presiding over the case at the time, entered two interlocutory
orders disposing of the parties’ cross-motions for summary judgment. Judge Work
granted the defendants’ motion in part, rendering an interlocutory, take-nothing
judgment on the Texas Open Meetings Act claim. Judge Work also granted the
Howeth parties’ motion in part, entering the following, interlocutory declarations and
order:
DECLARED that the plat applications filed by [the Howeth parties] with
the [City] on June 6, 2000 were not acted on within 30 days; . . .
 
DECLARED that the plat applications filed by [the Howeth parties] with
the [City] on June 6, 2000 were approved by force of Texas Local
Government Code 212.009; . . .
 
ORDERED that a writ of mandamus issue as against the Chair of [the
Commission] . . . instructing Respondent White to issue two Certificates
of no Action Taken, as a result of the Commission’s failure to consider
said Applications within the thirty (30) day period required by state law;
. . . .

It is unclear from the record whether a writ of mandamus ever issued, but no one
disputes that the Commission did not issue certificates of no action after the entry of
Judge Work’s order.
          By the time of trial in June of 2004, the Howeth parties had added as
defendants in their individual capacity Weiner, Ward, and Vazquez and alleged
claims against White in his individual capacity. At that same point in time, the
Howeth parties asserted the following claims against the following defendants:
1.Violation of the Texas Open Meetings Act



 
Factual Basis:the Commission’s holding a closed, executive
session during the August 30, 2000 meeting
 
Defendants:the Commission and White, in what appears
to be his official capacity (and, thus, the
City)



 
Relief Sought:voiding of the August 30, 2000 votes and the
issuance of mandamus to order certificates of
no action on the June preliminary plat
applications
 
2.Writs of Mandamus
 
Factual Bases:(1) the Commission’s failure to issue
certificates of no action on the June
preliminary plat applications and (2) its denial
of all of the Howeth parties’ plat applications
 
Defendants:the Commission and White, in his official
capacity
 
Relief Sought:issuance of mandamus to require the
Commission (1) to issue certificates of no
action on the June preliminary plat
applications, (2) to approve the June
preliminary plat applications, and (3) to
approve the August preliminary and final plat
applications
 
3.Mandatory Temporary and Permanent Injunctions
 
Factual Bases:(1) the Commission’s failure to issue
certificates of no action to approve the any of
the Howeth parties’ plat applications, (2) its
failure to approve the August preliminary and
final plat applications, and (3) its failure to
issue building permits
 
Defendant:The City
 
Relief Sought:injunctions ordering (1) that certificates of no
action issue, (2) that the August preliminary
and final plat applications be approved, (3)
that the Brogden properties be allowed to
begin subdivision, (4) that cause be shown as
to why building permits had not been issued,
(5) that building permits issue (alternatively,
that no punitive actions be taken for the
Howeth parties’ not obtaining building
permits)
 
4.Declaratory Judgment
 
Factual Bases:(1) the Commission’s failure to issue
certificates of no action on the June
preliminary plat applications and (2) its
failure to approve any of the Howeth parties’
plat applications
 
Defendants:N/A
 
Relief Sought:declarations that (1) the flag-lot configuration
was “unavoidable”; (2) the June and August
plat applications met “all the requirements of
the pertinent provisions of Texas state law,
the Codes and the City Ordinances”; (3) the
Howeth parties were entitled to certificates of
no action on the June preliminary plat
applications and, alternatively, that those plat
applications be approved; (4) the Howeth
parties were entitled to approval of the
August preliminary and final plat
applications; and (5) the Commission’s
actions on August 2, 2000 were void for its
failure to have issued certificates of no action
in July
 
5.Regulatory Takings (inverse condemnation) Under the State and
Federal Constitutions



 
Factual Bases:(1) the Commission’s denial of all plat
applications and (2) the City’s moratorium on
plat applications and subsequent banning of
all flag lots after the Brogden properties’ plat
applications were rejected in August 2000
 
Defendants:the Commission and White, in his official
capacity (and, thus, the City)



 
Relief Sought:(1) declaration that the Commission’s conduct
“constitutes an unlawful regulatory taking”
entitling the Howeth parties to reasonable
compensation, (2) reasonable compensation,
and (3) damages for reduction of the Howeth
parties’ “investment backed expectations”
 
6.Violation of State and Federal


 Procedural Due Process and Due
Course of Law (42 U.S.C. section 1983


)
 
Factual Bases:(1) the Commission’s depriving the Howeth
parties of a meaningful opportunity to be
heard and (2) its employing a
“constitutionally defective process that lacked
fundamental fairness”
 
Defendants:all defendants
 
Relief Sought:damages
 
7.Tortious Interference with Contractual Relationships
 
Factual Bases:(1) unspecified actions that interfered with the
Howeth parties’ relationship with its
real-estate broker (apparently concerning the
enforcement of the City’s sign ordinance) and
(2) unspecified actions that interfered with the
Howeth parties’ “prospective rights with
regard to future purchasers of” the Brogden
properties
 
Defendants:all defendants
 
Relief Sought:damages
 
8.Violation of State and Federal Substantive Due Process and Due
Course of Law (42 U.S.C. section 1983)
 
Factual Bases:(1) denial of all plat applications, (2) failure
to issue certificates of no action, (3) failure to
comply “with court orders,” (4) filing of a
wrongful lis pendens against the Brogden
properties, (5) “wrongful and punitive
enforcement” of the sign ordinance, (6)
trespassing onto the Brogden properties to
remove signs, (7) unlawful use of police
power to enforce tree ordinance, and (8)
“arbitrary, punitive and disparate” use of
permitting process
 
Defendants:all defendants, with respect to (1) and (2), and
the individual defendants and the City, with
respect to (3) through (8)
 
Relief Sought:damages
 
9.Violation of State and Federal Equal Protection (42 U.S.C.
section 1983)
 
Factual Basis:(1) denial of all plat applications, (2) failure
to issue certificates of no action, (3) failure to
comply “with court orders,” (4) filing of a
wrongful lis pendens against the Brogden
properties, (5) “wrongful and punitive
enforcement” of the sign ordinance, (6)
trespassing onto the Brogden properties to
remove signs, (7) unlawful use of police
power to enforce tree ordinance, and (8)
“arbitrary, punitive and disparate” use of
permitting process
 
Defendants:all defendants, with respect to (1) and (2), and
the individual defendants and the City, with
respect to (3) through (8)
 
Relief Sought:damages

          Appellees answered, asserting as affirmative defenses, among other matters,
that (1) governmental immunity from suit barred the Howeth parties’ claims for
damages for equal protection and due process violations and for tortious interference
with contracts against the City, the Commission, and White in his official capacity;
(2) the Howeth parties lacked standing to assert any claims because none of them
owned the Brogden properties at the time that the various plat applications were
submitted or denied; and (3) the Howeth parties’ claims for damages against the
individual defendants in their individual capacities were barred by official immunity,
qualified immunity, judicial immunity, legislative immunity, and the federal
Volunteer Protection Act.


 Appellees also asserted a counterclaim seeking an
injunction to prevent the Howeth parties from selling the Brogden properties as
divided tracts until subdivision plats had been approved for those properties.
          Before trial, the trial court dismissed the Howeth parties’ takings claims against
all appellees after having concluded that only a Harris County court at law had
jurisdiction over those claims.


 After a bench trial, the court rendered a take-nothing
judgment on all of the Howeth parties’ remaining claims and, by “mother hubbard”
clause, rendered judgment against appellees’ counterclaim for an injunction against
the Howeth parties. In that final judgment, the court also vacated Judge Work’s
interlocutory summary-judgment orders. The trial court entered fact findings and
legal conclusions. 
Unchallenged and Improperly Raised Matters
A.      Violation of the Texas Open Meetings Act
          Under no issue or argument do the Howeth parties challenge the rendition of
a take-nothing judgment on their claim for violation of the Texas Open Meetings Act. 
We must, therefore, affirm the judgment rendered against this claim. See Jacobs v.
Satterwhite, 65 S.W.3d 653, 655 (Tex. 2001); Garcia v. Nat’l Eligibility Express,
Inc., 4 S.W.3d 887, 889 (Tex. App.—Houston [1st Dist.] 1999, no pet.).
B.      Tortious interference with Contract
          Likewise, under no issue or argument do the Howeth parties challenge the
rendition of a take-nothing judgment on their claim for tortious interference with
contract against any appellee. We thus affirm the judgment rendered against this
claim. See Jacobs, 65 S.W.3d at 655; Garcia, 4 S.W.3d at 889.
C.      Violation of Procedural Due Process
 
          The Howeth parties also do not challenge the rendition of a take-nothing
judgment on their claim for violation of procedural due process. We thus affirm the
judgment rendered against this claim, as well. See Jacobs, 65 S.W.3d at 655; Garcia,
4 S.W.3d at 889.
D.      Section 1983 Claims for Damages Based on Violations of Equal Protection,
Substantive Due Process, and Substantive Due course of Law
          The Howeth parties do not explain under this or any other appellate challenge
which fact findings or legal conclusions they are challenging. We have nonetheless
reviewed the substance of all of their appellate arguments to determine, as best we
can, which fact findings and legal conclusions the Howeth parties have implicitly
challenged for each appellate argument. See City of Pasadena v. Gennedy, 125
S.W.3d 687, 691 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (construing
appellant’s challenges, which did not specify to which fact findings or legal
conclusions they related, to attack pertinent fact findings and legal conclusions
supporting complained-of aspects of judgment); see also Tex. R. App. P. 38.1(e),
38.9; Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex.1989) (“[I]t is our
practice to construe liberally points of error in order to obtain a just, fair and equitable
adjudication of the rights of the litigants.”). Applying this liberal standard, we
nonetheless do not find in the Howeth parties’ opening brief any argument that can
reasonably be construed as challenging the following fact findings that are material
to their constitutional claims for damages under section 1983:
●the only actions that the individual defendants took with regard
to the Howeth parties or their plats was to vote on their plats at
the pertinent Commission meetings (all individual defendants) or
to refuse to issue certificates of no action (White) (fact findings
3 and 4);
 
●the Howeth parties did not have an ownership interest in the
Brogden properties at the time that the plats were denied (fact
finding 8);
 
●the Howeth parties suffered no damages from the City’s actions
in connection with the construction of the house built on each of
the Brogden properties (fact finding 10);



 
●“Had [the Howeth parties] moved forward with the construction
of one new single-family home on each [of the Brogden
properties] they could have realized a substantial profit from the
sale of [the Brogden properties] in their undivided condition.”
(fact finding 13)

          Neither do we find in the Howeth parties’ opening brief any argument that we
can construe as a challenge to the following legal conclusions that are material to
their constitutional claims for damages under section 1983:
 
●Plat approval is a quasi-judicial function, and individual planning
and zoning commission members who vote on plats are acting in
a quasi-judicial capacity (legal conclusion 1);
 
●the individual defendants were entitled to absolute or quasi-judicial immunity for the Howeth parties’ state and federal claims
against them (legal conclusion 2);
 
●the earnest money contracts to purchase the Brogden properties
did not give the Howeth parties a vested interest in “the subject
tracts” (legal conclusion 8);
 
●the Howeth parties lacked standing to pursue claims for damages
arising out of the denial of the various plats (legal conclusion 9);
and 
 
●the Howeth parties did not have a vested property interest in the
approval of any of their plat applications (legal conclusion 10).

          “[A]n appellate court will overrule a challenge to fact findings that underpin
a legal conclusion or disposition when other fact findings that also support that legal
conclusion or disposition go unchallenged.” Britton v. Tex. Dep’t of Crim. Justice,
95 S.W.3d 676, 682 (Tex. App.—Houston [1st Dist.] 2002, no pet.); see Long v.
Long, 196 S.W.3d 460, 468–69 (Tex. App.—Dallas 2006, no pet.). “The same result
obtains when more than one legal conclusion independently supports a judgment or
ruling, but the appellant challenges only one of those legal conclusions on appeal.” 
Britton, 95 S.W.3d at 682; see Long, 196 S.W.2d at 468–69. The rules are grounded
in the overarching rule that, absent fundamental error, we may not raise a challenge
on an appellant’s behalf when that challenge is absent from its brief. See Walling v.
Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993) (“We have held repeatedly that the courts
of appeals may not reverse the judgment of a trial court for a reason not raised in a
point of error.”). 
 

          1.       Section 1983 Claims for Damages for Violations of Substantive Due
Process and Due course of Law




          Under these rules, we must overrule the Howeth parties’ appellate challenges
to judgment rendered on their section 1983 claims for damages against all appellees
based on violations of substantive due process and substantive due course of law for
denial of the June and August plat applications, for failure to issue certificates of no
action, and for actions post-dating the denial of all plat applications. 
          First, such substantive claims for violations of due process and due course of
law required that the Howeth parties have a vested property interest that was affected
by the complained-of actions. See City of Amarillo v. Hancock, 150 Tex. 231, 234,
239 S.W.2d 788, 791 (1951) (indicating that, for plaintiff to bring self within
protection of due process clause, right adversely affected by action of administrative
body must be vested property right); see also Pedraza v. Tibbs, 826 S.W.2d 695, 697
(Tex. App.—Houston [1st Dist.] 1992, writ dism’d w.o.j.) (“Vested rights . . . are
protected by the due process provisions of both the Texas and United States
Constitutions.”). 
          Nonetheless, on appeal, the Howeth parties did not timely challenge legal
conclusions 8 through 10—that they had no vested property rights at the time of the
complained-of actions and that they lacked standing to pursue claims for damages
arising out of the plat applications’ denial.


 Likewise, they did not timely challenge
fact finding 8—that they had no ownership interest in the Brogden properties at the
time that the plats were denied. The failure timely to challenge this finding and these
conclusions is fatal to the Howeth parties’ section 1983 claims for damages based on
violations of substantive due process and due course of law by any appellee.


 
Accordingly, we may not reverse the take-nothing judgment rendered on these claims
against any appellee. See Britton, 95 S.W.3d at 681.
          Second, to the extent that their section 1983 claim for damages for these
constitutional violations was based on any actions post-dating the plat applications’
denials, the Howeth parties do not challenge the trial court’s factual finding 10, that
they suffered no damages from the City’s actions in connection with the construction
of the house on each of the Brogden properties. The Howeth parties have also failed
to challenge factual finding 13, that they could have realized a substantial profit had
they moved forward with the construction of a single home on each of the Brogden
properties and sold each property undivided. Neither do the Howeth parties timely
challenge the trial court’s legal conclusion 9, that they “lacked standing to pursue
claims for damages arising out of the denial of the subject plats.” A claim for
damages based on violations of substantive due process or due course of law under
section 42 U.S.C. section 1983 obviously requires that damages have occurred and
that the claimant have standing to pursue those damages. Accordingly, this is an
additional reason that we may not reverse the take-nothing judgment rendered on
these claims against any appellee. See id.
          Third, the trial court concluded, in legal conclusions 1 through 3, that the
individual defendants were entitled to four types of immunity—official immunity,
qualified immunity, judicial immunity, and immunity under the Federal Volunteer
Protection Act—for all of the Howeth parties’ causes of action against them,
including those asserted under section 1983 for constitutional violations. Nowhere
in their opening brief do the Howeth parties expressly or impliedly challenge legal
conclusions 1 and 2, in which the trial court determined that the individual defendants
were entitled to judicial immunity for all of the Howeth parties’ causes of action,
necessarily including those under section 1983 for violations of substantive due
process and due course of law.


 Finally, the Howeth parties do not attack factual
findings 3 and 4, that the only actions that the individual defendants took with regard
to the Howeth parties or their plats was to vote on their plats at the pertinent
Commission meetings (all individual defendants) or to refuse to issue certificates of
no action (White), or legal conclusion 1, that plat approval is a quasi-judicial function
and that individual planning and zoning commission members who vote on plats are
acting in a quasi-judicial capacity. The Howeth parties’ failure to attack these
findings and conclusions is fatal to their challenge to the judgment rendered on their
section 1983 claim for damages against the individual defendants for these alleged
constitutional violations.
          2.       Section 1983 Claims for Damages for Violations of Equal Protection

          Because of the Howeth parties’ failure timely to challenge on appeal key fact
findings and legal conclusions, we must also overrule their appellate challenges to
judgment rendered on their section 1983 claims for damages against all appellees
based on violations of equal protection for the denial of the June and August plat
applications, for failure to issue certificates of no action, and for actions post-dating
the denial of all plat applications. 
          First, as for the equal protection claim for damages against the individual
defendants, nowhere in their opening brief do the Howeth parties expressly or
impliedly challenge legal conclusions 1 and 2, in which the trial court determined that
the individual defendants were entitled to judicial immunity for all of the Howeth
parties’ causes of action, necessarily including those claims for violations of equal
protection. Nor do they challenge factual findings 3 and 4, that the only actions that
the individual defendants took with regard to the Howeth parties or their plats was to
vote on their plats at the pertinent Commission meetings (all individual defendants)
or to refuse to issue certificates of no action (White), or legal conclusion 1, that plat
approval is a quasi-judicial function and that individual planning and zoning
commission members who vote on plats are acting in a quasi-judicial capacity. The
Howeth parties’ failure to attack these findings and conclusions is fatal to their
challenge to the judgment rendered on their equal protection claim against the
individual defendants. See id. We thus cannot reverse the take-nothing judgment
rendered on the Howeth parties’ equal protection claims against the individual
defendants. See id.
          Second, the Howeth parties do not challenge the trial court’s factual finding 10,
that they suffered no damages from the City’s actions in connection with the
construction of the house on each of the Brogden properties, or factual finding 13,
that they could have realized a substantial profit had they moved forward with the
single homes’ construction and sold each property undivided. An equal protection
claim seeking monetary damages under section 42 U.S.C. section 1983 requires that
damages have occurred. As for their equal protection claim against the City and the
Commission for damages based on the denial of all plat applications and the failure
to issue certificates of no action, the Howeth parties have not timely challenged the
trial court’s fact finding 13, concerning damages, and its legal conclusion 9, that they
“lacked standing to pursue claims for damages arising out of the denial of the subject
plats.” It is fundamental that one seeking to recover damages have standing to
recover the damages that he seeks. See Douglas v. Delp, 987 S.W.2d 879, 883 (Tex.
1999) (analyzing whether spouse or husband’s bankruptcy estate had standing to
pursue various claims for damages). The Howeth parties’ failure timely to attack
these findings and this conclusion is fatal to their challenge to the judgment rendered
on their equal protection claim against the City. See id. We thus cannot reverse the
take-nothing judgment rendered on the Howeth parties’ section 1983 claims for
damages against any appellee for violations of equal protection. See id.
E.      Summary
          In sum, for the reasons set forth above, we may not reverse the judgment to the
extent that it disposed of the following causes of action:
1.for violation of the Texas Open Meetings Act;
 
2.for tortious interference with contract (against all appellees);
 
3.for violations of procedural due process and due course of law
(against all appellees);
 
4.for damages, under section 1983, for violations of substantive due
process and due course of law (against all appellees);
 
5.for damages, under section 1983, for violations of equal
protection (against all appellees).

Accordingly, with respect to the individual defendants, there are no claims on which
we may reverse the judgment. With respect to the City, the Commission, and White
in his official capacity, the only claims or requests for relief that we may consider
when reviewing the Howeth parties’ appellate issues are those (1) for writ of
mandamus, injunctive relief, and declaratory judgment relating to the refusal to issue
certificates of no action and the denial of the June preliminary plat applications (issue
one) and (2) to declare City ordinance section 16-38(c) void for being
unconstitutionally vague, either facially or as applied (issue three). See Code of
Ordinances, City of Hedwig Village § 16-38 (Ord. No. 345, § 3.13, 4-11-91). We
overrule issue two, concerning section 1983 claims for damages for violations of
substantive due process, substantive due course of law, and equal protection, in its
entirety.
Standard of Review
          The trial court entered fact findings and legal conclusions. A judgment “may
not be supported upon appeal by a presumed finding upon any ground of recovery or
defense, no element of which has been included in the findings of fact; but when one
or more elements thereof have been found by the trial court, omitted unrequested
elements, when supported by evidence, will be supplied by presumption in support
of the judgment.” Tex. R. Civ. P. 299.
          Again, because the Howeth parties do not explain under any of their issues
which fact findings or legal conclusions they are challenging, we have attempted to
glean from the substance of their appellate arguments which fact findings and legal
conclusions they challenge. See Gennedy, 125 S.W.3d at 691; see also Tex. R. App.
P. 38.1(e), 38.9; Sterner, 767 S.W.2d at 690. Given the way that they have phrased
their appellate arguments, we further construe the Howeth parties to have raised
legal-sufficiency challenges to the fact findings that they have implicitly attacked.
          We review legal conclusions de novo. Gennedy, 125 S.W.3d at 691. 
Regarding fact findings, “[w]hen, as here, we have a complete reporter’s record on
appeal, we review the trial court’s fact findings under the same standards for legal
sufficiency as govern the review of jury findings.” Id. As with challenges to jury
findings, “[w]hen the complaining party challenges the legal sufficiency of the
evidence underlying an adverse finding on which it had the burden of proof, the party
must demonstrate on appeal that the evidence conclusively established all vital facts
in support of the issue.” Id. at 692. “We employ a two-part test in reviewing such a
challenge.” Id. “We first look for evidence supporting the finding, ignoring all
evidence to the contrary.” Id. “If there is no evidence supporting the finding, we then
examine the entire record to see if the contrary proposition is established as a matter
of law.” Id. We apply this standard of review to the Howeth parties’ legal-sufficiency challenges to the court’s fact findings on the elements of their claims.
          To determine whether there is some evidence to support a fact finding, “we
must view the evidence in a light that tends to support the finding of disputed fact and
disregard all evidence and inferences to the contrary.” Wal-Mart Stores, Inc. v.
Miller, 102 S.W.3d 706, 709 (Tex. 2003). If more than a scintilla of evidence
supports the fact finding, we must uphold it. See id. More than a scintilla of evidence
exists if the evidence “‘rises to a level that would enable reasonable and fair-minded
people to differ in their conclusions.’” Ford Motor Co. v. Ridgway, 135 S.W.3d 598,
601 (Tex. 2004) (quoting Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 711
(Tex. 1997)). Conversely, evidence that is “‘so weak as to do no more than create a
mere surmise’” is no more than a scintilla and, thus, no evidence. Id. (quoting
Kindred v. Con/Chem., Inc., 650 S.W.2d 61, 63 (Tex. 1983)). “The final test for legal
sufficiency must always be whether the evidence at trial would enable reasonable and
fair-minded people to reach the verdict under review. . . . [L]egal-sufficiency review
in the proper light must credit favorable evidence if reasonable [fact finders] could,
and disregard contrary evidence unless reasonable [fact finders] could not.” City of
Keller, 168 S.W.3d at 827; accord Chubb Lloyd’s Ins. Co. of Tex. v. H.C.B. Mech.,
Inc., 190 S.W.3d 89, 92 (Tex. App.—Houston [1st Dist.] Dec. 8, 2005, no pet.).
          The trial court in a bench trial is the sole judge of witnesses’ credibility, and
it may choose to believe one witness over another; a reviewing court may not impose
its own opinion to the contrary. City of Keller, 168 S.W.3d at 819. Because it is the
province of the trial court in a bench trial to resolve conflicting evidence, we must
assume that it resolved all conflicts in accordance with its fact findings. Id. at
819–20.
Challenges Concerning the June Preliminary Plat Applications
          In part of issue one, the Howeth parties argue that the trial court erred in
concluding that they were not entitled to mandamus, injunctive, or declaratory relief
to obtain certificates of no action from the Commission for the June preliminary plat
applications because the Commission did not rule on those applications within 30
days. In the remainder of issue one, the Howeth parties alternatively argue that the
trial court erred in concluding that they were not entitled to declaratory relief because
“[t]he City simply denied the June 2000 [preliminary] plat [applications] for arbitrary
and capricious reasons.”
A.      The Law Relating to Plat Approval
          “Plat approval, like zoning, is an exercise of the police power.” City of Round
Rock v. Smith, 687 S.W.2d 300, 302 (Tex. 1985). “The police power is a grant of
authority from the people to their governmental agents ‘to promote the public
convenience or the general prosperity, as well as regulations designed to promote the
public health, the public morals, or the public safety.” Id. (quoting Lombardo v. City
of Dallas, 124 Tex. 1, 11, 73 S.W.2d 475, 479 (1934)).
The purpose of plat approval is to ensure that subdivisions are safely
constructed and to promote the orderly development of the community. 
Plat approval protects future purchasers from inadequate police and fire
protection, inadequate drainage, and insures sanitary conditions. Public
health, safety, and morals are general public interests.

Id. 
          Furthermore, “[i]n deciding whether to approve or disapprove a proposed plat
the planning commission must interpret and construe the city plan, applicable
ordinances and state statutes to determine whether the proposed plat complies with
these laws.” Id. at 303. As one commentator has explained:
[T]he Texas subdivision enabling act makes what appears to be a direct
grant of undefined police power to the governing body to enact
subdivision regulations, while leaving local municipal planning
commissions free to formulate standards used in reviewing approval of
plats of new subdivisions . . . .

John Mixon & Justin Waggoner, The Role of Variances in Determining Ripeness in
Takings Claims Under non-Zoning Ordinances & Subdivision Regulations of Texas
Municipalities, 29 St. Mary’s L. Rev. 765, 779 (1998) (emphasis added) (footnotes
and citations omitted). For these reasons, “plat approval or disapproval is a
quasi-judicial exercise of the police power.” City of Round Rock, 687 S.W.2d at 307.
          “[P]lat approval is a discretionary function that only a governmental unit can
perform.” Id.; accord Woodson Lumber Co. v. City of College Station, 752 S.W.2d
744, 747 (Tex. App.—Houston [1st Dist.] 1988, no writ). Nonetheless, in situations
in which the plat applicant “has done all that the statutes and law demands,” the
approval of the plat “becomes a mere ministerial duty . . . .” City of Corpus Christi
v. Unitarian Church of Corpus Christi, 436 S.W.2d 923, 927 (Tex. Civ.
App.—Corpus Christi 1968, writ ref’d n.r.e.) (applying same rule to planning
commission’s denial of building permit); cf. Medina County Comm’rs Court v.
Integrity Gr., Inc., 21 S.W.3d 307, 309 (Tex. App.—San Antonio 1999, pet. denied)
(“Under section 232.002 of the Local Government Code, the authority of the
commissioners court to approve subdivision plats is not discretionary if the plat meets
the statutory requirements set forth in section 232.001.”).


 
          Mandamus will lie for the violation of this “mere ministerial duty.” That is,
when a planning commission, “in its construction of the law, deprives a citizen of an
unquestionable legal right and there is no other adequate remedy, the court having
power to issue mandamus may review the matter.” Unitarian Church of Corpus
Christi, 436 S.W.2d at 927; Medina County Comm’rs Court, 21 S.W.3d at 309 (“A
writ of mandamus will issue to compel a public official to perform a ministerial act. 
An act is ministerial when the law clearly spells out the duty to be performed by the
official with sufficient certainty that nothing is left to the exercise of discretion.”)
(citation omitted). 
          For this reason, one’s remedy for a planning commission’s arbitrary or
capricious denial of a plat application—or of a certificate of no action under the 30-day rule of Local Government Code section 212.009(a) and (d)—is generally to seek
mandamus relief or a mandatory injunction in the trial court. See Woodson Lumber
Co. v. City of College Station, 752 S.W.2d 744, 747 (Tex. App.—Houston [1st Dist.]
1988, no writ) (“If a landowner believes the City’s action is arbitrary, then it may
obtain relief by mandamus or mandatory injunction requiring the City to approve the
plat.”); see also Myers v. Zoning & Planning Comm’n of the City of W. Univ. Place,
521 S.W.2d 322, passim (Tex. App.—Houston [1st Dist.] 1975, writ ref’d n.r.e.)
(considering appeal from denial of mandamus to compel zoning and planning
commission’s issuance of certificate of no action on submitted plat); Kirschke v. City
of Houston, 330 S.W.2d 629, 631, 634 (Tex. Civ. App.—Houston [1st Dist.] 1959,
writ ref’d n.r.e.) (noting in dictum that mandamus or mandatory injunction may be
sought to compel city to issue building permits), disapproved on other grounds by
City of Austin v. Teague, 570 S.W.2d 389, 394 (Tex. 1978). Declaratory judgment
has also been sought as a remedy. See Unitarian Church of Corpus Christi, 436
S.W.2d at 925 (noting that declaratory judgment was sought).
B.      The Relevant Texas Local Government Code Provisions
          Chapter 212 of the Texas Local Government Code provides that the owner of
a tract of land within city limits or in its extraterritorial jurisdiction who subdivides
the tract must “have a plat of the subdivision prepared.” Tex. Loc. Gov’t Code
Ann. § 212.004(a) (Vernon 1999). Section 212.004 then provides that, to be
recorded, the plat must (1) describe the subdivision by metes and bounds; (2) “locate
the subdivision with respect to a corner of the survey or tract or an original corner of
the original survey of which it is a part”; and (3) state the dimensions of the
subdivision and of various items within the tract that are to be dedicated to public and
other limited uses. Id. § 212.004(b) (Vernon 1999). Section 212.004 also requires
that the owner or proprietor of the tract (or that person’s agent) acknowledge the plat
in the manner required for the acknowledgment of deeds. Id. § 212.004(c) (Vernon
1999). The statute further provides that the plat must be filed and recorded with the
county clerk of the county in which the tract is located and that certain filing and
recording provisions of the Texas Property Code apply. Id. § 212.004(d), (e) (Vernon
1999). A person desiring approval of a plat must apply to, and file a copy of the plat
with, the municipal planning commission. Id. § 212.008 (Vernon 1999). “The
municipal authority responsible for approving plats must approve a plat or replat that
is required to be prepared under this subchapter and that satisfies all applicable
regulations.” Id. § 212.005 (Vernon 1999). 
          “The municipal authority responsible for approving plats shall act on a plat
within 30 days after the date the plat is filed. A plat is considered approved by the
municipal authority unless it is disapproved within that period.” See id. § 212.009(a). 
We refer to this rule as “the 30-day rule.” The same statute further provides that “if
the municipal authority responsible for approving plats fails to act on a plat within the
prescribed [30-day] period, the authority on request shall issue a certificate stating the
date that plat was filed and that the authority failed to act on the plat within that
period.” Id. § 212.009(d) (Vernon 1999). The applicant may then use the certificate
of no action in lieu of the municipal authority’s endorsement of approval. See id.
C.      The Local Ordinances
          Chapter 16 of the City’s Code of Ordinances concerns platting of property. 
Within chapter 16, plats are divided into preliminary and final plats. Code of
Ordinances, City of Hedwig Village § 16-2 (Ord. No. 345, § 1.03, 4-11-91). A
“preliminary plat” is “[a] map or drawing of a proposed subdivision prepared in
accordance with the provisions of this chapter, illustrating the features of the
development for review and preliminary approval by the Commission, but not
suitable for recording with the County Clerk of Harris County.” Id. A “final plat”
is “[a] complete and exact subdivision plan prepared in conformity with the
provisions of this chapter and in a manner suitable for recording with the County
Clerk of Harris County.” Id. 
          Under chapter 16, it is unlawful for anyone to subdivide any tract, lot, or parcel
of land within city limits “unless and until a preliminary and final plat of such
subdivision has [sic] been approved in accordance with the terms of this chapter.” 
Code of Ordinances, City of Hedwig Village § 16-13(a) (Ord. No. 345, § 1.04, 4-11-91). The preliminary plat accompanying a preliminary-plat application must include,
among other things, the property’s legal description, together with the County name
and the survey and abstract number; reference “to at least one established corner of
a nearby recorded subdivision or the nearest public street right-of-way intersection”; 
and the location of all building setback lines within the plat boundaries. Code of
Ordinances, City of Hedwig Village §§ 16-12, 16-13(b), (f), (q) (Ord. No. 345,
§§ 2.02, 2.03, 4-11-91). The final plat accompanying a final-plat application must
incorporate all preliminary-plat requirements and must also, among other things,
reflect any previously imposed conditions and requirements of final approval and
must contain all engineering and surveying data in sufficient form and building lines
and easements. Code of Ordinances, City of Hedwig Village §§ 16-14, 16-15(c), (e),
(h) (Ord. No. 345, §§ 2.04, 2.05, 4-11-91). The chapter further provides as follows:
The Commission shall review each plat submitted to it on a preliminary
basis and upon a final basis. The Commission shall approve any plat if
it is in compliance with the provisions of this chapter and other rules and
regulations as may have been or may be adopted by the City Council
governing plats and/or the subdivision of land. Upon the receipt of a
plat, the Commission’s authorized actions are as follows:
 
(a)Grant preliminary approval or preliminary approval with
conditions.
 
(b)Defer preliminary action until the next regular meeting.
 
(c)Grant final approval, if in conformance with the conditions
of preliminary approval or final approval subject to
additional conditions.
 
(d)Disapprove any plat, either preliminary or final, if the
Commission determines that it fails to comply with the
policies, standards, or requirements contained in this
chapter or other rules and regulations as may have been or
may be adopted by the City Council governing plats and/or
the subdivision of land.

Code of Ordinances, City of Hedwig Village § 16-18 (Ord. No. 345, § 2.08, 2.05, 4-11-91).
D.      The Howeth Parties’ Challenge Based on the 30-Day Rule
          In the first part of issue one, the Howeth parties argue that the trial court erred
in concluding that they were not entitled to mandamus or injunctive relief to obtain
certificates of no action from the Commission for the June preliminary plat
applications because the Commission did not rule on those applications within 30
days.


 They also argue that the trial court erred in rendering a take-nothing judgment
on their request for a declaration of “their rights to obtain a Certificate of no Action
. . . to proceed with recording the platted subdivision of each property” and that “all
actions taken by the COMMISSION at the August 2, 2000 meeting are void in light
of the COMMISSION’s failure to proceed [sic] the 30 day time period required by
state law.” By this portion of issue one, we deem the Howeth parties to challenge
legal conclusions 22, 23, 24, and 25—each of which concern whether preliminary plat
applications that are not ruled on within 30 days and that are not in recordable form
are approved by operation of law


—and fact finding 11, which supported those
conclusions.



          The parties disagree as to whether the 30-day rule applies to all plats, both
preliminary and final, or only to final plats. Section 212.009 does not distinguish
between preliminary and final plats—indeed, appellees admit that such a distinction
is “not specifically contemplated” by the statute. Chapter 212 defines a plat only as
including a replat. See Tex. Loc. Gov’t Code Ann. § 212.001(2) (Vernon 1999). 
The parties disagree how a two-tier plat-approval process like the City’s fits into the
30-day rule. 
          It is undisputed that the June preliminary plats lacked the owners’
acknowledgment, as required by Local Government Code section 212.004(c), and that
they did not “locate the subdivision with respect to a corner of the survey or tract or
an original corner of the original survey of which it is a part,”


 as required by Local
Government Code section 212.004(b). Indeed, the trial court expressly found as
much in fact finding 11: The June preliminary plats “did not include a signature and
an original corner.” Nor is it disputed that the June plats were preliminary, as
contemplated by City code section 16-13; that they did not comply with all
requirements for preliminary plats in that they lacked building setback lines; and that
they also lacked certain requirements for final plats, as established by City code
section 16-15. See Code of Ordinances, City of Hedwig Village §§ 16-13, 16-15
(Ord. No. 345, §§ 2.03, 2.05, 4-11-91). 
          What the parties dispute is whether the filing of a preliminary plat—which did
not comply with section 212.004’s requirements, did not meet all requirements of the
City’s ordinance for preliminary plats, and did not include matters that the City’s
ordinance required for final plats—triggered section 212.009(a)’s 30-day rule, when
section 212.009(a) does not distinguish between preliminary and final plats.
          We do not consider this issue in a complete vacuum. In 1975, this Court issued
an instructive opinion in Myers, 521 S.W.2d 322. The Myers Court considered
chapter 212’s predecessor, former Texas Revised Civil Statute 974a,


 which
contained a materially similar 30-day rule and similar rules concerning
acknowledgment and other recording requirements for plats. See id. at 324–25. The
Myers Court did not reveal whether the municipality had a two-tier plat-approval
procedure like the City’s here, did not state whether the subdivision applicant had
filed a preliminary plat, and did not base its holding on the distinction between a 
preliminary and final plat. Nonetheless, its holding is instructive. 
          The Myers Court held that section 212’s predecessor contemplated that, for a
court to enforce the 30-day rule, a plat filed with the municipal planning commission
(as part of the plat-approval process) had to be in the form required for filing with the
county clerk. Id. at 325. That is, in order for the 30-day rule to be judicially enforced
by mandamus, the plat filed with the planning commission has to, among other things,
be acknowledged and locate the subdivision with respect to an original corner of the
original survey of which the tract is a part. Id.; see Tex. Loc. Gov’t Code Ann.
§ 212.004(b), (c) (providing that plats must be acknowledged and must meet three
requirements, including locating subdivision with respect to original corner of
original survey, to be recordable). Because the plat under consideration was not
acknowledged and did not locate the subdivision with respect to an original corner
of the original survey, the plat
could not be recorded by the court clerk if the City Planning
Commission is required to furnish the certificate showing the date on
which the copy was filed with the Commission and the fact that the
Commission failed to take action thereon within thirty days. The owner
of land must file with the county clerk a plat which has received
approval of the city planning commission. Any material change,
addition, or deletion to the plat would be unauthorized and would
constitute a new plat which had not been approved by the city planning
commission.

Id. The Myers Court concluded, “Since in our view the plat which petitioner desires
to have recorded does not comply with the law entitling it to recording, an order
requiring the City Planning Commission to issue the desired certificate would be
useless,” making mandamus improper. Id. at 326. The Myers Court accordingly
affirmed the trial court’s denial of the mandamus that the landowner had sought. Id.
          Myers stands for the proposition that a court will not, by mandamus, order a
planning commission to issue a certificate of no action under section 212.009(d)
when the commission does not act within 30 days on a plat that does not meet Texas
Local Government Code chapter 212’s requirements for recording.


 See id. 
Although Myers did not base its holding on a “preliminary versus final plat”
distinction, its holding determines the outcome here. Under Myers, if a plat is not in
recordable form, whether the plat be styled preliminary or final, a court may not
enforce the 30-day rule by mandamus to require issuance of a certificate of no action. 
See id.
          The Howeth parties argue that Myers is not controlling because, here, the “only
evidence” elicited was that the June preliminary plats “did comply with the recording
statute, and would be accepted in the real property records” in their preliminary form. 
This is not what the cited record shows, however. Instead, the record, viewed in the
required light, shows that the June preliminary plats lacked the owners’
acknowledgment and that they did not, on their face, locate the subdivision with
respect to the required corner.


 Also, the Howeth parties’ expert did not testify that
a plat lacking an acknowledgment could be recorded; rather, he testified that the
acknowledgment was commonly added after the Commission’s approval, but before
recording.
          Alternatively, the Howeth parties argue that if the 30-day rule cannot be
enforced for plats that do not meet chapter 212’s recording requirements, the purpose
of the rule—to prevent municipalities from sitting endlessly on plat
applications—will be thwarted. Nonetheless, Myers has been the law of this Court
for 33 years. We do not overrule such long-settled precedent unless there is an
extremely compelling reason to do so, and we find no such reason here. See
Grapevine Excavation, Inc. v. Maryland Lloyd’s, 35 S.W.3d 1, 5 (Tex. 2000) (“Stare
decisis has its greatest force in statutory construction cases. Adhering to precedent
fosters efficiency, fairness, and legitimacy. More practically, it results in
predictability in the law, which allows people to rationally order their conduct and
affairs.”) (citations omitted). Moreover, the Myers Court’s holding has been followed
by the Fourteenth Court of Appeals. See Lacy v. Hoff, 633 S.W.2d 605, 611 (Tex.
App.—Houston [14th Dist.] 1982, writ ref’d n.r.e.). Were we to depart from stare
decisis to overrule Myers, we could cause a split between sister courts of concurrent
appellate jurisdiction, which we are also disinclined to do without extremely
compelling reasons. We further decline to follow the authority from other
jurisdictions on which the Howeth parties rely to the extent that that authority
conflicts with Myers.



          Sufficient evidence supports the trial court’s fact finding that the June
preliminary plats lacked “a signature and an original corner,” and the trial court thus
did not err in concluding that the plats did not meet the statutory requirements for
recording found in section 212.004(b) and (c). Accordingly, the trial court did not err
in refusing to order the Commission to issue certificates of no action on the June
preliminary plats, either by mandatory injunction or by writ of mandamus. For the
same reasons, we also hold that the trial court did not err in rendering a take-nothing
judgment on the Howeth parties’ request for a declaration of “their rights to obtain
a Certificate of no Action . . . to proceed with recording the platted subdivision of
each property” and that “all actions taken by the COMMISSION at the August 2,
2000 meeting are void in light of the COMMISSION’s failure to proceed [sic] the 30
day time period required by state law.” What our precedent does not allow us to
enforce by mandamus or injunction, we will not enforce by declaration, particularly
when that declaration might itself need to be enforced by injunctive relief. Because
of these holdings, we further hold that the trial court did not err in refusing to enter
injunctions concerning the issuance of building permits based on the June preliminary
plats.
          We overrule this portion of issue one.



E.      The Howeth Parties’ Challenge Based on the Merits of the June
Preliminary Plat Applications

          In a final paragraph under issue one, the Howeth parties argue alternatively:
Even putting aside the mandatory thirty-day rule and statutory approval
brought about by the City’s failure to deny [the Howeth parties’] plats
as required by § 212.009, [the Howeth parties’] June 6, 2000
[preliminary] plat applications facially met all relevant requirements for
approval. The commission was expressly advised of this fact at the
August 2, 2000 meeting by City Attorney Alan Petrov and City Building
Official Paul Addington. The City simply denied the June 2000
[preliminary] plat [applications] for arbitrary and capricious reasons. 
Accordingly, [the Howeth parties are] entitled to declaratory judgment
giving the municipal approval required for filing plats in the county real
property records.

(Record citations omitted.) This is the sole discussion of this portion of issue one: 
there is no further analysis, nor is there citation to any legal authority. This particular
argument is thus inadequately briefed and will not be considered. See Tex. R. App.
P. 38.1(h) (“The brief must contain a clear and concise argument for the contentions
made, with appropriate citations to authorities and to the record.”); Saudi v. Brieven,
176 S.W.3d 108, 120 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (declining
to reach, for lack of adequate briefing, appellate challenge lacking citation to
authority and having insufficient analysis). 
          Moreover, there was evidence that the June preliminary plats lacked building
setback lines, as required by the City ordinance for preliminary plats, which
undermines the Howeth parties’ appellate assertion that the “June 6, 2000
[preliminary] plat applications facially met all relevant requirements for approval.”


 
See Code of Ordinances, City of Hedwig Village § 16-13(q) (Ord. No. 345, § 2.03 4-11-91). Likewise, Petrov and Addington, whose statements the Howeth parties’
reference in the one sentence quoted above, stated only that the June preliminary plat
applications met all of the requirements for lot size, width, and depth, not that they
met “all relevant requirements for approval.”


 Additionally, as set out in the
background section, Petrov, the Commission’s legal counsel, advised the Commission
that it had discretion to interpret the term “unavoidable” and that he saw two
reasonable interpretations of that section—one of which was how the Commission
interpreted the term—even though he believed that the other interpretation was the
more logical. Furthermore, as we explain below in our discussion of the Howeth
parties’ constitutional vagueness challenge, the interpretation of “unavoidable” that
the Commission chose is reasonable under the ordinance’s plain language. And
finally, the Commission’s written ruling explained that “the Commission found that
the use of a flag lot . . . was not unavoidable as that term [was] interpreted by the
Commission.”


 
          The Howeth parties do not analyze or explain under this portion of issue one
(1) why the Commission would have acted arbitrarily and capriciously in denying
preliminary plat applications that did not meet the setback requirement; (2) why an
implied finding that the applications failed to meet the setback requirement could not
be made; (3) why this deemed finding, if it could be made, could not support the trial
court’s legal conclusions and its judgment; or (4) how the Commission would have
acted arbitrarily or capriciously in interpreting the term “unavoidable” in one of the
two ways that its counsel opined were reasonable, when (as discussed below) the
ordinance’s plain language would allow that interpretation and when the
Commission’s written ruling indicated that the June preliminary plat applications
were denied based on that interpretation. Absent fundamental error, we may not
make arguments for appellants that the appellants themselves have not made. See
Walling, 863 S.W.2d at 58. 
          We thus overrule the remainder of issue one.
Vagueness
          In issue three, the Howeth parties argue that section 16-38 of the City’s
ordinances is unconstitutionally vague, both facially and as applied to them. 
Specifically, they argue that the term “unavoidable” used in the ordinance concerning
flag lots is vague for giving “unfettered discretion to the Commission” to approve or
to reject flag lots. By supplemental legal conclusion, the trial court determined that
section 16-38 did not violate the Howeth parties’ substantive due process rights for
being unconstitutionally vague, either facially or as applied.
A.      The Law Applicable to a Vagueness Analysis
          “We begin our analysis by presuming the statute is constitutional.” Walker v.
Gutierrez, 111 S.W.3d 56, 66 (Tex. 2003). “[T]he party challenging the
constitutionality of a statute bears the burden of demonstrating that the enactment
fails to meet constitutional requirements.” Id.
          One asserting a facial constitutional challenge bears an especially heavy
burden: he must show “that the [challenged law] is unconstitutional in every possible
application.” In re commitment of Fisher, 164 S.W.3d 654, 655 (Tex. 2005)
(applying same to vagueness challenge). That is, the challenger “must demonstrate
that the statute always operates unconstitutionally.” Wilson v. Andrews, 10 S.W.3d
663, 670 (Tex. 1999). 
          “A statute or ordinance is violative of due process and fatally vague when
persons regulated by it are exposed to some risk or detriment without fair warning of
the nature of the proscribed conduct.” City of Webster v. Signad, Inc., 682 S.W.2d
644, 646 (Tex. App.—Houston [1st Dist.] 1984, writ ref’d n.r.e.). “When persons of
common intelligence are compelled to guess at a law’s meaning and applicability, due
process is violated and the law is invalid.” Id. The values that vague laws offend are
two-fold: first, “‘because we assume that man is free to steer between lawful and
unlawful conduct, we insist that laws give the person of ordinary intelligence a
reasonable opportunity to know what is prohibited, so that he may act accordingly’”;
second, “‘if arbitrary and discriminatory enforcement is to be prevented, laws must
provide explicit standards for those who apply them.’” Village of Hoffman Estates
v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498, 102 S. Ct. 1186, 1193 (1982)
(quoting Grayned v. City of Rockford, 408 U.S. 104, 108–09, 92 S. Ct. 2294, 2298
(1972)).
          Nonetheless, “‘statutes are not automatically invalidated as vague simply
because difficulty is found in determining whether marginal offenses fall within their
language.’” Signad, Inc., 682 S.W.2d at 646 (quoting Pennington v. Singleton, 606
S.W.2d 682, 689 (Tex. 1980)). “[N]o more than ‘a reasonable degree of certainty can
be demanded,’” and this requirement of reasonable certainty “‘does not preclude the
use of ordinary terms to express ideas which find adequate interpretation in common
usage and understanding.’” Id. (quoting Sproles v. Binford, 286 U.S. 374, 393, 52 S.
Ct. 581, 587 (1932), and Pennington, 606 S.W.2d at 689). Likewise, “[a] statute is
not unconstitutionally vague merely because it does not define words or phrases.” 
Zaborac v. Tex. Dep’t of Pub. Safety, 168 S.W.3d 222, 225 (Tex. App.—Fort Worth
2005, no pet.). And just because the parties disagree as to a statute’s or ordinance’s
meaning does not mean “‘that we must necessarily guess at its meaning,’” i.e., the
existence of that dispute does not necessarily render the law unconstitutionally vague. 
Canal Ins. Co. v. Hopkins, 238 S.W.3d 549, 566 (Tex. App.—Tyler 2007, pet.
denied) (quoting Mills v. Fletcher, 229 S.W.3d 765, 770 (Tex. App.—San Antonio
2007, no pet.)). Furthermore, “[r]egulatory statutes governing business activity are
allowed greate[r] leeway than is allowed [sic] criminal statutes in applying the ‘fair
notice’ test . . . .” Signad, Inc., 682 S.W.2d at 646.
 
B.      The Law Applicable to Interpreting Ordinances
          “Municipal ordinances are interpreted by the same rules of construction that
apply to statutes.” SWZ, Inc. v. Bd. of Adjustment of City of Fort Worth, 985 S.W.2d
268, 270 (Tex. App.—Fort Worth 1999, pet. denied). “Statutory interpretation is a
question of law.” Cardinal Health Staffing v. Bowen, 106 S.W.3d 230, 237 (Tex.
App.—Houston [1st Dist.] 2003, no pet.) “Whe[n] the construction of municipal
ordinances is involved,” as when statutory construction is involved, “the primary duty
of this court is to carry out the intentions of the municipal legislative body.” Bolton
v. Sparks, 362 S.W.2d 946, 951 (Tex. 1962). In carrying out this duty, “we begin
with the statute’s plain language because we assume that the Legislature tried to say
what it meant and, thus, that its words are the surest guide to its intent.” Bowen, 106
S.W.3d at 237–38. “In ascertaining legislative intent, we do not confine our review
to isolated statutory words, phrases, or clauses, but we instead examine the entire
act.” Id. at 238. “We construe words according to their common usage, unless they
have acquired a technical or particular meaning.” Id. A statute or ordinance is
ambiguous when its language “could support more than one reasonable
interpretation.” In re Miss. Pac. R.R. Co., 998 S.W.2d 212, 217 (Tex. 1999). 
          “Contemporaneous construction of an ordinance by the agency charged with
its enforcement is entitled to serious consideration, so long as the construction is
reasonable and does not contradict the plain language of the ordinance.” SWZ, Inc.,
985 S.W.2d at 270; cf. Tex. Gov’t Code Ann. § 311.023(6) (Vernon 2005) (“In
construing a statute, whether or not the statute is considered ambiguous on its face,
a court may consider among other matters the: . . . (6) administrative construction of
the statute . . . .”). That is, “[i]f . . . the meaning of the provision be doubtful or
ambiguous, the construction placed upon a statutory provision by the agency charged
with its administration is entitled to weight.” Calvert v. Kadane, 427 S.W.2d 605,
608 (Tex. 1968).
C.      Discussion
          Chapter 16 of the City’s ordinances is entitled “Platting of Property.” Article
III of Chapter 16 is entitled “Design Standards” and generally concerns requirements
for plats. Section 16-38, which falls within Article III, is entitled “Lots, general
provisions.” The stated purpose of section 16-38 is “to provide general overall
guidelines for the establishment of individual lots within a subdivision.” See Code
of Ordinances, City of Hedwig Village § 16-38 (Ord. No. 345, § 3.13, 4-11-91). 
Subsection (c) of section 16-38 provides: “Unless unavoidable, key or flag shaped
lots shall not be permitted.” Id. (emphasis added). 
          The term “unavoidable” is not defined in the City’s relevant ordinances. At the
August 2, 2000 Commission hearing, Petrov told the Commission that no case law
or legislative history shed light on the term’s meaning and that it was thus “in the
discretion of” the Commission “to come to an agreement on the definition of” the
term. We have likewise found no authority interpreting section 16-38, and the parties
have not pointed us to any case interpreting “unavoidable” in the context of
subdivision law. The term “unavoidable” is generally defined by dictionary as
“unable to be avoided” or “inevitable,” which is not particularly helpful to our
analysis. E.g., Random House Webster’s Unabridged Dict. 2053 (2nd ed.).
          Against this backdrop, Petrov advised the Commission that he saw two
possible definitions of unavoidable: (1) that development of the land was otherwise
impossible, an interpretation allowing denial of the June preliminary plat applications
because there was evidence that the lots could be developed with one home per
property, and (2) that subdivision of the land was otherwise impossible, an
interpretation that could allow approval of the June preliminary plat applications
because the evidence was undisputed that neither Brogden property could be
subdivided without violating the City’s other subdivision requirements unless flag
lots were used. Petrov advised that he believed that interpretation (2) was the more
logical because “the entire provision was found in the City Code dealing with
subdivision of lots.” Nonetheless, he advised the Commission that it was in “the
Commission’s discretion to decide what ‘unless unavoidable’ meant” because “it was
possible to come to one of two conclusions”; that “courts would defer to an
administrative body’s interpretation . . . provided that those interpretations were not
arbitrary and capricious and not out of line with normal, rational thought”; and that
whatever conclusion the Commission reached, “a few words should be added to the
sections of the Code to provide clarification.”
          We conclude that the plain language of section 16-38, when read in context,
supports two reasonable interpretations of “unavoidable”: those two interpretations
set out by Petrov at the August 2, 2000 hearing. On the one hand, chapter 16 in
general “appl[ies] to all subdivisions of land within the City of Hedwig Village.” See
Code of Ordinances, City of Hedwig Village § 16-1 (Ord. No. 345, § 1.02, 4-11-91)
(emphasis added). Considering section 16-38 in light of the chapter’s general focus
supports the Howeth parties’ interpretation because it could demonstrate the
ordinance’s intent that what must be unavoidable for the use of a flag lot is the ability
to subdivide property without using a flag lot. 
          On the other hand, however, section 16-38 itself states that its purpose is “to
provide overall guidelines for the establishment of individual lots within a
subdivision.” See Code of Ordinances, City of Hedwig Village § 16-38 (Ord. No.
345, § 3.13, 4-11-91) (emphasis added). That is, the focus of the specific section in
which the term “unavoidable” appears is not the subdivision of the piece of property
into smaller lots, but is instead the design of the individual lots that are created within
the subdivision plat. See, e.g., id. § 16-38(a) (“(a) General Lot Design, Arrangement,
Layout. The general lot design within any subdivision shall be based upon the
concept that such lots are created and established as undivided tracts of land and that
purchasers of such lots can be assured that these tracts of land meet the following
basic criteria: . . . .”). Considering section 16-38 in light of the specific section’s
focus supports the Commission’s interpretation because it could demonstrate the
ordinance’s intent that what must be unavoidable for the use of a flag lot is the ability
to develop an individual lot, rather than the ability to subdivide a larger piece of
property into individual lots in the first place.
          Because there are two reasonable interpretations of the term “unavoidable,” the
term is ambiguous as a matter of law. See, e.g., In re Miss. Pac. R.R. Co., 998 S.W.2d
at 217. But this ambiguity does not render section 16-38 constitutionally infirm for
vagueness. 
          First, there are only two reasonable ways to read this ordinance. This is not a
situation like that considered in City of Webster v. Signad, Inc., cited by the Howeth
parties, in which this Court held that an ordinance referring to “any substantial parts”
of a sign was unconstitutionally vague. 682 S.W.2d at 647–48. There, a virtually
indefinite number of meanings could be ascribed to the quoted phrase. As we
reasoned:
Parts of a sign may be simultaneously “substantial” and “insubstantial”
depending on whether the test used is economic, physical, or functional. 
If an economic test is used, how expensive must a repair be to rise to the
level of “substantial”? If a sign is valued at $30,000, is $1,000 in
damage “substantial”? If a physical test is considered, is damage to one
pole of a five-pole sign “substantial”? Should “substantial parts” of the
sign include other than structural parts? Section B(15) of the Ordinance
defines a “sign structure” as “the support, uprights, bracing, and
framework of any outdoor advertising sign”; sign panels, readily
movable and changeable, are not defined as a part of the sign structure. 
Is damage to one or more sign panels therefore to be considered as
damage to a “substantial” part of the sign? A sign with broken or
inoperative lights is not functional during nighttime hours, although the
cost of repairs is small in comparison with the sign's total cost. From a
functional perspective, the lights are “substantial parts” of the sign,
while from a cost perspective they are not. The same ambiguity arises
in numerous similar practical considerations. The potential for
ambiguity is shown in the appellant city engineer’s testimony. He
testified that he considered panels alone to be “substantial parts” of the
sign, although they are not defined as part of the “sign structure.” He
also stated that he gave no consideration to the dollar amounts of
damage in determining the substantiality of damage. In the absence of
additional guidelines, each successive city engineer must select his own
standard for determining what is a “substantial part” of a sign. 
Operators of outdoor advertising signs receive no fair and adequate
notice from section H(2) of the Ordinance as to what sign repairs are
permitted or prohibited.

Id. An ordinance so vague as to give no notice at all, and to mean virtually anything,
is distinguishable from an ordinance that is limited to two reasonable meanings, one
of which the agency selects when the issue is presented to it. 
          “Regulatory statutes governing business activity are allowed greate[r] leeway
than is allowed [sic] criminal statutes in applying the ‘fair notice’ test” and “no more
than ‘a reasonable degree of certainty can be demanded . . . .’” Id. at 646. This
ordinance meets that test. It is evident from the record of the August 2, 2000 hearing
that the parties both understood that only two interpretations were up for
consideration, which were the two put forth by Petrov. The record demonstrates that
the Howeth parties were able clearly to articulate before the Commission why their
espoused interpretation was the correct one. They have thus not shown that they
lacked fair notice as to what the ordinance’s language could require.
          Second, the City’s ordinances give the Commission “all of the powers and
responsibilities of a planning commission relating to the approval or disapproval of
. . . plats . . . including, but not limited to, V.T.C.A., Local Government Code
Chapter[] . . . 212 . . .” and allows the Commission to interpret any Planning and
Zoning Code provision “in the event [its] meaning or intent . . . is not plain and
obvious . . . .” Planning & Zoning Code, City of Hedwig Village § 302(I)(2) (Ord.
No. 276, § 302, 4-24-86); id. § 201(9) (Ord. No. 419, 4-11-96). The Texas Supreme
Court has likewise stated that “[i]n deciding whether to approve or disapprove a
proposed plat the planning commission must interpret and construe the city plan,
applicable ordinances and state statutes to determine whether the proposed plat
complies with these laws.” City of Round Rock, 687 S.W.2d at 303 (emphasis added);
see Tex. Loc. Gov’t Code Ann. § 212.010(a) (Vernon 1999) (providing that “[t]he
municipal authority responsible for approving plats shall approve a plat if” various
criteria are met, including conformance to city’s general plan and to any rules adopted
by city governing plats and subdivisions). Accordingly, the Commission is
empowered to construe ordinances like section 16-38 in order to determine if the
submitted plat complies with the law and the City’s overall plan. Courts will
generally defer to the interpretation of the agency, like the Commission, charged with
enforcing an ordinance when that interpretation is reasonable. See Calvert, 427
S.W.2d at 608. We have already held that the Commission’s interpretation was
reasonable under the ordinance’s plain language. This is not a situation in which the
Commission adopted an interpretation that was one of an indefinite number of
possible interpretations in order to support an arbitrary or capricious enforcement.
          In sum, section 16-38 was not unconstitutionally vague as applied to the
Howeth parties. Because section 16-38 was not vague as applied to them, it
necessarily cannot be facially vague. See In re commitment of Fisher, 164 S.W.3d at
655 (holding that person challenging statute as facially vague must show “that the
[challenged law] is unconstitutional in every possible application.”) (emphasis
added). The trial court thus did not err in concluding that section 16-38 did not
violate the Howeth parties’ substantive due process rights for being unconstitutionally
vague, either facially or as applied. The trial court thus further did not err in
rendering a take-nothing judgment on the Howeth parties’ vagueness challenges. 
          We overrule issue three.
Conclusion
          We affirm the judgment of the trial court.
 
Tim Taft
Justice

Panel consists of Justices Taft, Alcala, and Hanks.